## MARTHA F. PORTER vs. CITY OF NEWTON.

Middlesex. March 2, 1881; March 7. — May 5, 1882. ENDICOTT & DEVENS, JJ., absent.

The St. of 1877, c. 100, authorized a city to widen, deepen and straighten the channel of a certain brook, in any portion thereof between its source and its outlet in a certain river in said city, and to drain the lands abutting thereupon and adjacent thereto. The city passed an order that the superintendent of streets, under the direction of the highway committee, be authorized to construct a drain on and from a certain street, thence through another street to the brook in question at another street; and that a certain sum be appropriated for said work, to be charged to appropriation for sewerage and drainage. The drain ordered to be constructed did not include within its limits any part of the channel of the brook. A person, through whose land the waters of the brook passed, and above whose land the drain in question emptied into the brook, brought a petition for an assessment of damages caused by the construction of the drain; and offered evidence of the manner in which the drain was constructed until it entered the brook. He also offered to show, by the assistant superintendent of streets of the city, that in building this drain, and in order properly to construct the same, he and the men under him, without the petitioner's consent, entered upon his land, and removed a part of the bed of the brook; and that, in order to make the drain of any practical use, as directed by the city to be made, it was necessary to enter said land and to do what was done. No evidence was offered to show that these acts were done by the witness under the direction of the committee on highways mentioned in the order. The petitioner further offered to show that the city solicitor, in another proceeding, contended that the drain was built under the St. of 1877. *Held*, that there was no evidence that the city, in constructing the drain, acted under the St. of 1877, c. 100.

A petition to the mayor and aldermen of a city, for the assessment of damages occasioned to the petitioner's land by the construction of a drain, contained no reference to any statute, except that it prayed that the damages should be assessed and paid over according to the provisions of a certain statute. *Held*, on a petition to the Superior Court, for the assessment of damages, in the nature of an appeal from the action of the mayor and aldermen, that the court had power to allow the petition to be amended, if the petitioner could maintain the petition under any statute applicable to the proceedings.

A petition, under the St. of 1869, c. 111, for the assessment of damages for the making of a drain, in the city of Newton, must be addressed, under the charter of that city, St. 1873, c. 326, § 24, to the city council; and, if addressed to the mayor and aldermen, the petitioner cannot maintain a petition to the Superior Court, in the nature of an appeal from the order of the mayor and aldermen, giving him leave to withdraw.

PETITION to the Superior Court, alleging that the petitioner was, and had been since January 1, 1877, the owner in fee of a parcel of land in Newton, with a dwelling-house thereon; that an ancient brook called Cheese Cake Brook flowed through her

land, and was a highly ornamental, useful and valuable part thereof, and the water naturally running in said brook was pure, sweet and wholesome, and was used by the petitioner for drinking and other domestic purposes, until the action of the respondent hereinafter mentioned; · that by the St. of 1877, *c.* 100, the respondent was authorized to widen, deepen and straighten the channel of Cheese Cake Brook, and to drain the land adjacent thereto; that, acting under and by virtue of the authority therein contained, the respondent, during the summer and fall of 1878, constructed a drain or common sewer along and under Auburn Street, and through the same to Washington Street and into Cheese Cake Brook, at a point on said brook where it flows across and under Washington Street, and above the land of the petitioner; that great quantities of dirty water and drainage were thereby emptied into said brook and carried on and over said land, all of which, before the construction of said drain or common sewer, emptied into said brook at a point thereon below the land of the petitioner, or not at all; that in consequence of the action of the respondent in constructing said drain or common sewer, that portion of said brook upon the petitioner's land had been permanently converted into a drain or common sewer, and the water therein had become foul and infected, and the petitioner had been deprived of the use thereof, to the great damage of her estate; that § 2 of the St. of 1877, *c.* 100, provided that the respondent should be liable to pay all damages sustained by any persons in their property by any doings under this act, and that the board of mayor and aldermen should award such damages to the owners of such lands; that the said board had, within six months of the filing of the petition, refused and neglected to award any damages; and that the petitioner was aggrieved thereby, and prayed that the damages sustained by her be determined and awarded to her.

The petitioner was afterwards allowed to amend her petition by adding thereto a second count, which contained substantially the same allegations as those in the first count, except those referring to the St. of 1877.

The answer admitted the petitioner's ownership of the land described in her petition, and that Cheese Cake Brook ran through the same; that the respondent had made a conduit for

the surface water of certain streets and entered the same into said brook just above the petitioner's land; denied that the respondent acted under the St. of 1877; and alleged that the action of the respondent had benefited and not injured the petitioner's land; and that the petitioner's remedy, if any, was by an action at law, and not by this proceeding.

Trial in the Superior Court, before *Bacon*, J., who, after a verdict for the respondent, reported the case for the determination of this court. The report, after stating that the pleadings formed a part thereof, proceeded in substance as follows:

On September 2, 1878, the following order was passed: "Ordered, that the superintendent of streets, under the direction of the highway committee, be authorized to construct a drain on and from Greenough Street, Ward 3, thence through Auburn Street to Cheese Cake Brook at Washington Street. That a sum not to exceed seventeen hundred dollars is hereby appropriated for said work, to be charged to appropriation for sewerage and drainage."

During the fall of 1878, the city, acting under this order, constructed an underground drain, two feet and a half wide by two feet deep, and about eighteen hundred feet long, from a point in Greenough Street, along and under said street, to a point near its junction with Auburn Street, and thence under private land forming one of the corners of said streets to Auburn Street, and along and under said Auburn Street to Washington Street and into Cheese Cake Brook, at a point where it flows under said Washington Street and immediately thereafter enters upon the land of the petitioner. Another small, natural stream or brook was diverted from its course to enter said drain at a point near its beginning on Greenough Street, and carried through said drain into Cheese Cake Brook, which small stream, previous to the building of said drain, had always flowed into Cheese Cake Brook at a point below the land of the petitioner. At intervals in the gutters of said street there are constructed catch-basins connected with said drain, which receive and empty therein all the water which collects in the streets and the land around them. Said drain, so constructed by the city, received and carried off all the water coming from a natural water-shed of perhaps half a mile south of Greenough Street.

It appeared that, before the construction of said drain, said streets and the lands abutting thereon, and yards and cellars of houses along the same, were in the spring of the year often flooded after heavy rains, and, so far as drained at all, they were drained by the low land through which said diverted brook formerly flowed. The evidence tended to show that this drain was constructed of ledge stone laid up dry, and that the top was covered with granite and the bottom paved; and it appeared that at the present time there are no sewers in the city of Newton, other than this drain, so constructed.

There was evidence tending to show that a culvert, opening from the land of one Allen, entered into said drain, the drain being built in such a way that the water coming into the culvert entered the drain, and that an underground pipe, coming from Allen's house, reached the surface of the ground within eight or ten feet of said culvert, and that a small channel led therefrom to near the culvert, and that sink water was conducted thereby within eight feet of said drain; and that Allen's land was drained by said culvert, but on this point the evidence was conflicting.

There was evidence tending to show that when said drain crossed private land, as heretofore described, it passed within eight feet of a privy vault; that the quantity of water in Cheese Cake Brook is largely augmented by the entry of said drain, especially in rainy seasons, and that on one or more occasions the stream, in consequence of said augmentation, has overflowed its banks, and occasioned damage by undermining the petitioner's land; and that, previous to the entry of the drain, the water in said Cheese Cake Brook was pure and clear, and more or less used for domestic purposes; that since the laying of said drain the water therein has been dirty and unfit for domestic uses, and that the petitioner's estate was reduced in market value to the extent of one thousand dollars.

On November 25, 1878, the present petitioner and her husband presented a petition addressed to the mayor and board of aldermen of the respondent city, containing substantially the same allegations as in the present petition, and praying the mayor and aldermen to assess and pay over the damages sustained " according to the provisions of chapter one hundred of the Acts

and Resolves of the Legislature for the year 1877." This petition was referred to the highway committee, who reported that the allegations of the petition, as regards the construction of a common sewer running into Cheese Cake Brook, were not true; that the drain on Auburn Street was made for surface water only; that the demand for damages under the St. of 1877, c. 100, could not be considered by the city, "until the completion of the widening of Cheese Cake Brook as made in accordance with said act;" and recommending that the petitioners have leave to withdraw. This report was accepted by the board of aldermen on December 16, 1878.

The petitioner put in evidence and relied upon the St. of 1877, c. 100, and for the purpose of showing that the city laid the drain under this act, put in the following orders of the city government:

"City of Newton. In Board of Aldermen. June 4th, 1877. Ordered, That the joint standing committee on highways shall reconstruct Cheese Cake Brook according to the rights, powers and privileges given to the city of Newton, by the Acts of the General Court in the year 1877, chapter 100. That a sum not to exceed three thousand dollars be and the same is hereby appropriated for such work, and such amount to be charged to the highway appropriation. Approved June 26, 1877. Alden Speare, Mayor."

"September 18, 1877. Ordered, That the joint standing committee on highways be authorized to continue the reconstruction of Cheese Cake Brook, and that a sum not to exceed two thousand dollars be and is hereby appropriated to carry on the work, and the same to be charged to highway appropriation."

The petitioner, for the purpose of showing that the city was acting under the St. of 1877, called one Fuller, who was at the time the drain was constructed assistant superintendent of streets of the respondent city, and, under the superintendent, had charge of its construction; and offered to show by him that in building this drain, and in order properly to construct the same, he and the men under him, without and against her consent, entered upon the land of the petitioner and removed a part of the bed of the brook. The judge excluded this evidence, and the petitioner excepted.

The petitioner also offered to show, by the same witness, that in order to make the drain of any practical use, as directed by the city to be made, it was necessary to enter said land and to do what was done. This offer was made for the same purpose, and also to show that authority so to enter was implied in the authority to build said drain under the order of September 2, 1878; but the judge excluded the offer, and the petitioner excepted.

The petitioner also offered to show that the city solicitor of the respondent, in another proceeding, in which the said solicitor appeared for said city, and in which the authority of the city and its servants to construct the drain was brought in question, then contended that it was built under the St. of 1877; but the judge excluded the evidence, and the petitioner excepted.

The petitioner contended that she could maintain her case under the St. of 1877, *c.* 100, and also under the St. of 1869, *c.* 111, and also under the Gen. Sts. *c.* 44.

At the close of the petitioner's case, the judge, at the request of the respondent, ruled that the petition could not, on the foregoing evidence, be maintained under the St. of 1877, *c.* 100, nor under the St. of 1869, *c.* 111, nor under the Gen. Sts. *c.* 44, and ordered a verdict to be returned for the respondent.

If the judge erred in excluding evidence as above stated, or if it was a case which should have been submitted to the jury, a new trial was to be ordered; otherwise, judgment to be entered on the verdict.

The case was argued at the bar in March 1881, and reargued in March 1882, by *H. E. Bolles*, for the petitioner, and by *P. Thacher*, for the respondent.

FIELD, J. The St. of 1877, *c.* 100, authorized the city of Newton " to widen, deepen and straighten the channel of Cheese Cake Brook, so called, in any portion thereof between its source and its outlet in Charles River in said city, and to drain the lands abutting thereupon and adjacent thereto." Two orders were passed under this act, but the proceedings under these orders are not complained of here.

It seems clear from the language of the order of September 2, 1878, and from the fact that the appropriation was to be charged

to the appropriation for sewerage and drainage, that this order was intended as an exercise of the power to construct sewers and drains, and not as an exercise of the power granted by the St. of 1877, c. 100. Moreover, the thing ordered to be done was not what was authorized by the St. of 1877, c. 100. The drain ordered to be constructed did not include within its limits any part of the channel of Cheese Cake Brook. The only connection that this drain had with Cheese Cake Brook was that it emptied into the brook above the lands of the petitioner.

The evidence offered by the petitioner in reference to the manner in which the drain was constructed until it entered Cheese Cake Brook, had no tendency to show that the city in constructing it was acting or attempting to act under the St. of 1877, c. 100.

The petitioner also offered to show, by the assistant superintendent of streets of Newton, "that in building this drain, and in order properly to construct the same, he and the men under him, without and against her consent, entered upon the land of the petitioner and removed a part of the bed of the brook," and "that, in order to make the drain of any practical use, as directed by the city to be made, it was necessary to enter said land and to do what was done." This offer was made for the purpose of showing that the city in constructing this drain was acting under the St. of 1877, c. 100. No offer was made to show that these things were done by the assistant superintendent of streets under the direction of the joint standing committee on highways. Section 1 of the St. of 1877, c. 100, authorizes the city of Newton, "by such agents or commissioners as the city council thereof may appoint, from time to time, to widen, deepen and straighten the channel of Cheese Cake Brook," &c., and we infer that the orders of June 4 and September 18, 1877, were passed by the city council; and the joint standing committee on highways named in said orders we infer to have been a joint committee of the city council, who were the agents appointed by the city council pursuant to § 1. The highway committee mentioned in the order of September 2, 1878, and in the report of that committee which was accepted on December 18, 1878, we infer to have been a committee of the board of aldermen authorized by that board to construct the drain. If the acts of the assistant

superintendent of streets in removing a part of the bed of the brook, as offered to be shown, were incidental to the completion of the drain, they must be presumed, in the absence of all evidence to the contrary, to have been done either without authority, or under the same authority by which the drain was constructed; and, as has been said, no evidence was offered that any of this work was done under the direction of the joint standing committee on highways.

The petitioner also complains that a natural stream of water which flowed into Cheese Cake Brook below her land was diverted from its course and made to enter the drain, and was carried through the drain into Cheese Cake Brook above her land, whereby the water of Cheese Cake Brook passing through her land was increased in quantity. It cannot be contended that this has any tendency to show that the city, in the diversion of this watercourse into the drain, and in the construction of the drain, was acting under the St. of 1877, *c.* 100; and the offer to show that the city solicitor in another proceeding " contended that it " that is, the drain, " was built under the St. of 1877," was clearly not evidence that the drain was built by the city under that statute. In *Central Bridge* v. *Lowell*, 15 Gray, 106, it was the answer of the city of Lowell, signed by the mayor in behalf of the city and countersigned by the city solicitor, made in a former case between the same parties, that was admitted in evidence against the city. There was therefore no evidence on which the petition could be maintained under the St. of 1877, *c.* 100.

The petitioner contends that the petition may be maintained under the St. of 1869, *c.* 111, or under the Gen. Sts. *c.* 44, §§ 19, 20. The substance of the petitioner's complaint, apart from the evidence offered to show that the city in constructing the drain was acting under the St. of 1877, *c.* 100, is that the city, by the construction of the drain and the diversion into it of a natural stream of water, has increased the quantity of water in the brook flowing through her land, and has rendered the water of the brook, which was formerly pure, impure and unwholesome. The original petition to the mayor and board of aldermen of the city prayed that the amount of the damages might be assessed and paid " according to the provisions of chapter 100 of the Acts

and Resolves of the Legislature for the year 1877;" on which petition the board of aldermen granted leave to withdraw, and the petitioner, being aggrieved, filed her petition in the Superior Court; and this petition has been so amended that it may be assumed to be in proper form for the recovery of damages, if damages are recoverable in this form of proceeding, under either the Gen. Sts. *c.* 44, §§ 19, 20, or under the St. of 1869, *c.* 111. The Superior Court had authority to allow an amendment to the petition in that court.    *Winchester* v. *County Commissioners*, 114 Mass. 481.

It is contended that the petition could not be amended so as to state a different cause of action from that stated in the original petition to the mayor and aldermen of said city; but, if this be assumed, there is nothing in the original petition indicating under what statute the drain was constructed, or under what statute damages were claimed, except in the prayer at the end of the petition, and this alone ought not to prevent the petitioner from maintaining her petition under any statute applicable to the proceedings.    By the charter of the city of Newton, St. 1873, *c.* 326, § 24, "the city council shall have exclusive authority and power to lay out any new street or town way, and to estimate the damages any individual may sustain thereby," and "any person dissatisfied with the decision of the city council in the estimate of damages may make complaint to the Superior Court," &c.    The St. of 1869, *c.* 111, § 3, provides that "all persons or corporations suffering damage in their property, by reason of the laying, making or maintaining of any main drains or common sewers, shall have the same rights and remedies for ascertaining and recovering the amount of such damage, in the several cities, as in the case of the laying out of highways or streets in such cities respectively," &c.    It follows, therefore, that if the petitioner intended to proceed under the St. of 1869, *c.* 111, the original petition should have been addressed to the city council, and not to the mayor and board of aldermen, and that these proceedings, being in the nature of an appeal from the order of the mayor and aldermen granting the petitioner leave to withdraw her petition addressed to that board, and not to the city council, cannot be considered as proceedings under the St. of 1869, *c.* 111.

There is no evidence that brings these proceedings within the Gen. Sts. *c.* 44, §§ 19, 20.

It is unnecessary to consider whether the petitioner has any remedy against the city for the acts complained of, by an action of tort, in accordance with the decisions in *Manning* v. *Lowell,* 130 Mass. 21, *Hill* v. *Boston,* 122 Mass. 344, and *Brayton* v. *Fall River,* 113 Mass. 218.

As no error appears in the rulings of the justice before whom this cause was tried, the entry must be

*Judgment on the verdict.*