## WILLIAM MANNING *vs.* CITY OF LOWELL.

Middlesex.    Sept. 1, 1879. — Nov. 23, 1880.    COLT & SOULE, JJ., absent.

A city caused open paved gutters to be constructed on the sides of a street, and
  similar gutters to be constructed on other streets leading into it.  At the end
  of the gutters on the principal street were underground drains leading into a
  culvert through which flowed a natural watercourse.  In consequence of this
  construction, quantities of sand and filth were carried into the watercourse,
  causing it to overflow upon the plaintiff's land below the culvert, and obstruct-
  ing the passage of water from a drain which ran from the plaintiff's house to
  the watercourse.  *Held*, that, if the city had diverted the water from its natural
  course, and had accumulated it in such quantities as to create a private nui-
  sance to the plaintiff, he could maintain an action of tort against the city for
  the injury caused thereby.

LORD, J.   We are by no means certain that the construction
which we put upon the bill of exceptions in this case may not do
injustice either to the judge who tried the cause or to one of the
parties.   Inasmuch, however, as the result at which we have
arrived leads only to the re-trial of the cause, any misapprehen-
sion under which we may labor can be corrected in a subse-
quent trial.

The form of statement which raises the doubt as to the cor-
rectness of our interpretation is not to be commended.   When,
as is frequently the case now, the law and the fact are to be
passed upon by the same tribunal, it becomes important that the
bill of exceptions should distinctly show what was passed upon
as fact and what was ruled as law.   Throughout this long bill of
exceptions, substantially every statement is prefixed with the
words " it appeared."   From these words, the natural inference
would be that what followed them was to be taken as fact.   At
the close of several pages of such recital is this clause : " Under
the aforegoing evidence the presiding judge ruled that the plain-
tiff was not entitled to recover upon either count in his declara-
tion, and thereupon found for the defendant."   The bill of
exceptions then proceeds, " to which ruling and finding the
plaintiff excepts."

We think the construction which we ought to give to this
bill of exceptions is that, assuming all the facts stated in
the bill of exceptions to be true, they do not of themselves

show a cause of action in the plaintiff, nor authorize any such inference of fact as would warrant a jury in finding for the plaintiff.

This is an action of tort. The plaintiff claims to recover against the defendant upon three distinct grounds, although one of the grounds seems to have been waived. The first ground is, that by the construction of a sewer by the city under lawful authority, either through fault of the system of sewerage adopted, or by reason of the "wrongful acts, gross carelessness and wanton neglect of their servants" in the construction of the sewer, the plaintiff was damnified. The second cause of complaint is, that the street in Lowell known as School Street leads down a long and steep declivity, and that there enter into that street four cross streets, and that by the sides of School Street and by the sides of the cross streets paved gutters (which the plaintiff claims to be artificial watercourses) have been made by the defendant, by means of which vast quantities of water find their way into a natural watercourse which crosses School Street into the land of the plaintiff, and overflows his land, depositing thereupon not only large quantities of water, but of mud, filth and débris, to his serious injury. The third ground of complaint is, that, by excavations made for the laying of sewers, springs which fed his well had been cut off, so that the well, which before the act of the defendant had furnished him with an abundant supply of water, was by that act made dry. This last ground of complaint, at least as a distinct cause of action, we understand to be waived.

Although it is not necessary to pass upon the question definitively, we are inclined to the opinion that, so far as the claim is made for the construction of the sewer, no action of tort can be maintained, but that the remedy of the plaintiff, if he has been damnified, would be under the St. of 1869, c. 111. This act authorizes the mayor and aldermen of cities and the selectmen of towns to make and maintain all such main drains and common sewers as they shall adjudge to be necessary; and for this purpose authorizes them to enter upon private property and to appropriate the same, and gives to those suffering damages the right to recover the same in the same manner as when private property is taken or injured for the making or repairing

of highways. If the plaintiff has any claim other than that, it will be open to him upon the new trial.

As to the second ground of complaint, the defendant makes two answers; first, that all that it has done is simply to facilitate the flow of surface water, and if such surface water finds its way upon the plaintiff's land, it is *damnum absque injuria;* and, second, that if it has done more than that, it is in the alteration and repair of a highway, for which the plaintiff's remedy, if he is damnified, is by petition under the Gen. Sts. *c.* 44.

The plaintiff contends that the acts of which he complains do not fall within either of these classes; that there was no alteration by raising or lowering, or otherwise, of the highway; it was merely the adaptation of the road as it was to the circumstances, which called for facilitating the passage of the surface water; and he contends further that the acts done by the defendant are precisely the acts which in *Brayton* v. *Fall River*, 113 Mass. 218, 226, were held to render the city liable; that instead of its being the mere natural surface draining of a single street, it was the result of " an extensive and connected system of drains, by which the water from a number of streets was collected into one current and discharged " upon his land, and that the territory which was thus drained of its surface water was very much greater than the extent of territory which would be thus naturally drained without the intervention of the artificial means constructed by the city.

In the bill of exceptions it is recited that " it further appeared that there was an underground drain, not constructed for a sewer, on each side of School Street, extending from the northerly side of Broadway, through and under School Street, running lengthwise therein, to and connecting with an ancient watercourse at a culvert, where the same passed under School Street transversely; that these drains were about eighteen inches deep and about twenty inches wide, constructed of stone sides and top; that the drain on the westerly side of School Street is one hundred and ten feet long, and the one on the easterly side one hundred and thirty feet long; that that portion of School Street extending northerly from Broadway is a steep ascent, and that, for a distance of one thousand three hundred and sixty-four feet, the city had constructed since 1868, on each side of School Street, an

open gutter with stone-paved bottom, connecting with the covered drains, and extending up said ascent; that the city had also made similar gutters on each side of Goold Street for a distance of two hundred and fifty feet, on each side of Varney Street for a distance of fifty feet, on each side of Cross Street for a distance of one hundred feet, and on each side of Marsh Street for a distance of one hundred and fifty feet; that said last-named streets all opened into School Street northerly of Broadway, and that all of said gutters in these side streets discharged into said paved gutters in said School Street; that all these gutters and drains in all said streets were originally constructed for the purpose of receiving, collecting and carrying the surface water of the several streets, and what collected thereon from adjoining lands, into and through said gutters, and into and through said covered drains, and discharging the same into said culverts and natural watercourse, and thence through said natural watercourse running through plaintiff's said premises; that large quantities of water were collected into said gutters, which rapidly and with great force flowed down said paved gutters and through said covered drains and into said culvert and natural watercourse, collecting and carrying with it large quantities of sand, gravel, cinders and filth, and from time to time in 1870 to 1873 inclusive, filling up and overflowing the banks of said natural watercourse, discharging large quantities of sand, gravel, cinders and filth upon, and flowed with water, the surface of the plaintiff's land, and stopping of said drain leading from the basement of his house, and forcing back the water therein."

We do not intend to say that these facts required the presiding judge as matter of law to find for the plaintiff, nor do we mean to say that as matter of fact he ought to have found for the plaintiff; but they are facts, which, if they thus affected his mind, would authorize him to infer an illegality of conduct on the part of the defendant. If from the bill of exceptions we could determine whether the judge had or had not passed upon this question as one of fact, we should not disturb his finding, for in our judgment it is pure fact. We feel bound, however, to construe the bill of exceptions, as before intimated, as presenting a ruling in matter of law that the judge had no right upon this evidence to find for the plaintiff. Of course, such a ruling

includes not only all the facts upon which it is based, but all reasonable and proper inferences of fact which may be drawn from the facts stated. In this view, without intimating whether it would be proper or not to draw such an inference, we think the plaintiff has the right to have that question of fact passed upon. If, upon a hearing, the tribunal which is to pass upon the question finds that the defendant has done nothing except to dispose of the surface water, as under the rules of law in this Commonwealth it may, the defendant will be entitled to a verdict. If, upon the other hand, it shall appear that by artificial means the defendant has diverted the water from its natural course, and has accumulated it in such quantities as to create a private nuisance to this plaintiff, he will be entitled to recover such damages as in consequence thereof he proves he has sustained. *Exceptions sustained.*

*J. N. Marshall & M. L. Hamblet,* for the plaintiff.

*D. S. Richardson & G. F. Richardson,* for the defendant.