MARY J. NEALLEY *vs.* INHABITANTS OF ·BRADFORD & others.

Essex.  Nov. 7, 1887. — Jan. 6, 1888.  DEVENS & KNOWLTON, JJ.,
absent.

If a natural watercourse has its source, body, and outlet in a highway, the sur-
veyor of highways of the town in which the highway is situated may, for the
purpose of repairing the highway, change the direction of the watercourse,
and convey it in an open ditch along the highway; and the fact that the ditch is
dug between the centre of the highway and the land on the side, does not entitle
the owner of the land, although he owns the fee to the centre of the highway, to
maintain a bill in equity against the highway surveyor and the town to abate the
nuisance and for damages; but his remedy is under the Pub. Sts. *c.* 52, §§ 15, 16.

W. ALLEN, J.  This is a bill in equity for the abatement of
a nuisance, praying that the defendants may be enjoined against
diverting the water which flowed through a culvert across the
highway on to land of the defendant Gage, and conveying it in
a ditch in the highway in front of the plaintiff's land, and for
damages.  The defendants are the town of Bradford, the high-
way surveyor of the town, who opened the ditch and filled the
culvert, and Gage, the owner of the land upon which the water
flowed after passing through the culvert.  The case was referred
to a master, who reported the facts, his findings, and the evi-
dence.  The case was heard by a single justice upon exceptions
to the master's report, and, by agreement, upon the report as it
should stand after any changes that might be made on the ex-
ceptions, and comes up on appeal by the plaintiff from a decree
dismissing the bill.  We have not found it necessary to consider
all the points presented, and advert to the facts only so far as
they bear upon the questions decided.

The plaintiff's land lies on the southerly side of the highway,
and extends about three hundred and fifty feet on the highway.
Her house is on the westerly part of the land, and the easterly
part is vacant.  There was a ditch on the southerly side of the
highway extending ·from the plaintiff's easterly line westerly
about eighty feet.  Just beyond the plaintiff's easterly line
was a ditch extending southerly from the highway, from which
water passed into the ditch in the highway, though the former
did not open into the latter.  The plaintiff's cellar drain opened

into the ditch in the highway, about fifty feet from the easterly end of it.  The land about was flat and wet, and water collected and stood in the ditch.  About twenty-five feet westerly from the plaintiff's easterly line was the mouth of a culvert, which extended from the ditch to the northerly side of the highway, where it opened on land of the defendant Gage, and through which water from the ditch flowed upon Gage's land.  The bottom of the culvert was higher than the bottom of the ditch, and water stood in the ditch on both sides of the mouth of the culvert, and for fifty or sixty feet westerly from it.  The road in front of the plaintiff's house was higher than at the culvert, and there was no escape for the water in the ditch below the level of the culvert.  The road commissioners of Bradford cut down the street in front of the plaintiff's house, established a regular descending grade from the culvert beyond the plaintiff's westerly line, underdrained the road-bed, and made a ditch or drain on the southerly side of the highway, between the road-bed and the plaintiff's line, from the westerly end of the old ditch to a point beyond the plaintiff's land, and obstructed the culvert.

This was in 1882.  In 1883 the plaintiff filled up the new ditch and opened the culvert.  In 1884 the highway surveyor of Bradford, acting under the direction of the selectmen of the town, opened the ditch and filled up the culvert, which is the act of which the plaintiff complains.  At that time there was in front of the plaintiff's house and land, extending two hundred and twelve feet from her westerly line to a point eighty feet easterly from her house, a covered drain, most of it a stone drain twelve by fifteen inches in size, and the rest drain-pipe fifteen inches in diameter; from her easterly line, extending westerly about eighty feet, was the ditch which had been there from time immemorial, and connecting the two were the fifty or sixty feet of new ditch.  Through this ditch and drain ran the water which had formerly run through the culvert, and that which had run and stood in the old ditch.  The acts were all done in the repair of the highway, and were suitable and beneficial.  No question is made of the authority of the road commissioners and highway surveyor to change the grade of the street.  See *Callender* v. *Marsh*, 1 Pick. 418; *Burr* v. *Leicester*, 121 Mass. 241; *Sisson* v. *New Bedford*, 137 Mass. 255; *Sullivan* v.

*Fall River*, 144 Mass. 579. And no question was made of their authority to divert the watercourse and carry it in front of the plaintiff's land, if it was occasioned by surface water. See *Elder* v. *Bemis*, 2 Met. 599; *Benjamin* v. *Wheeler*, 15 Gray, 486; *Flagg* v. *Worcester*, 13 Gray, 601. But the plaintiff contends that it was a natural watercourse, and that there is no authority to divert a natural watercourse for the purpose of repairing a highway. The master found that there was no natural watercourse southerly from the highway; but that one arose within the limits of the highway, on its southerly side, in the ditch easterly of the culvert that has been spoken of, and flowed into and through the culvert, and out upon land of Gage. The plaintiff excepted to the finding of the master that there was no natural watercourse south of the highway. An examination of the evidence shows that the finding was required by it. The defendants excepted to the finding that there was a natural watercourse within the limits of the highway. This exception would require careful consideration were the finding material. As we are of opinion that the officers had authority to divert the water, though of a natural watercourse as found by the master, this and some other exceptions become immaterial.

The whole authority for repairing highways was originally in the highway surveyors. St. 1786, *c.* 81. The only statutory limitation upon that authority was the provision that appears in the Pub. Sts. *c.* 52, § 12, that highway surveyors should not, without the approbation of the selectmen first had in writing, cause a watercourse occasioned by the wash of the highway to be so conveyed by the side of the way as to incommode a house, store, shop, or other building, or to obstruct a person in the prosecution of his business. This section does not make such act illegal, so that an action will lie for it, but provides a remedy in the nature of an appeal to the selectmen. *Elder* v. *Bemis*, *ubi supra*. The Rev. Sts. *c.* 24, § 7, provided that county commissioners, on an application for laying out or altering a highway, might order specific repairs, as is provided in the Pub. Sts. *c.* 49, § 16. By the St. of 1877, *c.* 58, (Pub. Sts. *c.* 52, § 3,) highway surveyors are to act under the direction of the selectmen in expending money for repairs. By the St. of 1871, *c.* 158, towns were authorized to choose road commissioners who should

have all the authority of selectmen and highway surveyors regarding ways. See Pub. Sts. *c.* 27, § 75. The authority of the selectmen and road commissioners to order specific repairs is limited to town and private ways. Pub. Sts. *c.* 49, § 65.

Substantially the whole authority of the public over highways, as regards making repairs upon them, is vested in the highway surveyors, or the road commissioners as their substitutes, and the right of the public is the same in respect to the repair as it is in respect to the construction of a highway. That this power may be exercised to the damage of adjoining owners is recognized in the provision for compensation. Pub. Sts. *c.* 52, § 15.

In constructing and repairing a highway the public have the rights of a landowner as regards watercourses within the limits of the highway. It can make an artificial watercourse for surface water. In regard to natural streams it must have regard to rights of riparian owners upon them. It has no right to obstruct a stream so that the water will be prevented from flowing off from land of proprietors above; *Parker* v. *Lowell*, 11 Gray, 353; but it has a right to make changes in the course of a stream within the location of the highway which will not affect the rights in the stream of riparian proprietors upon it. *Rowe* v. *Granite Bridge Corporation*, 21 Pick. 344.

In the case at bar the riparian proprietors on the stream below the highway concurred in the action of the road commissioners and of the highway surveyor, so that the question whether the plaintiff could take advantage of a wrong to them is not presented. As the natural watercourse begins within the limits of the highway, there is no riparian proprietor above the highway whose rights can be affected. If it is assumed that the plaintiff owned the fee to the centre of the highway, that would give her no right to the water upon it as against the public. Any right relating to the water, as owner of the land, was taken with the land for public uses. The water in the highway was like earth and stones, so much matter to be disposed of in the manner most beneficial to the highway, the only restriction being that the rights of private property should not be infringed. There may be private property in earth and stones which happen to be upon the highway, but the only right in water running upon a highway which can conflict with the

right of the public to appropriate it to the repair of the way is the right of riparian proprietors on a stream to the natural flow of the water. As there were no such rights involved in the case at bar, the stream was practically wholly within the limits of the highway, and the right to convey a natural stream, whose source and body and outlet are in the highway, in an artificial drain or ditch within the highway, cannot be distinguished from the right to carry surface water.

No damage was done to the plaintiff except from the inconvenience of having an open watercourse in front of her vacant land, and no other or greater damage than would be caused by a watercourse for the wash of the street, unless a greater quantity of water might increase the inconvenience. But the amount of damage done to the plaintiff's estate is immaterial. The statute provides an adequate remedy. As the acts which occasioned the damage were lawful acts, done for the purpose of repairing the way, the plaintiff must pursue the remedy provided by the statute.                                    *Bill dismissed.*

*H. Carter & B. B. Jones*, for the plaintiff.
*I. A. Abbott*, for the defendants.