## Lucius R. Bates *vs.* Inhabitants of Westborough.
## Same & others *vs.* Same.

Worcester. October 1, 2, 1889. — February 27, 1890.

Present: Morton, C. J., Field, C. Allen, Holmes, & Knowlton, JJ.

*Surface Water — Towns — Sewers — Liability for Obstructions.*

A town is liable to a landowner for damages resulting from neglect to keep its sewers free from obstructions.

In an action of tort against a town for flooding the plaintiff's land with backwater from a drain, the declaration alleged that the drain was choked up by reason of various acts of the defendant. At the trial, the presiding judge, after stating in detail to the jury the conditions of liability, instructed them that, if they should find that not all the acts alleged operated to produce the injury, but that some of them did, they still could find for the plaintiff. *Held,* that the instruction meant only that less than all such acts would be enough, if the facts found by them satisfied the conditions just before stated, and that the defendant had no ground of exception.

A town discharged a system of sewers into a drain built by it on private land under a lease for a definite term. After the expiration of the term, the drain was permitted to remain, and received the drainage as before of which it was the necessary outlet, and through the neglect of the town became choked up, thereby flooding other land. The owner of this land thereupon brought an action for such flowage against the town, which thereafter under agreement with the lessor built and maintained a new and sufficient drain in the same place. *Held,* that the action could be maintained.

Two actions of tort, for flooding the plaintiffs' premises with surface water. Writs dated December 22, 1887. The declarations alleged that the plaintiffs, in carrying on a manufacturing business, successively occupied a parcel of land in Westborough, the plaintiff in the first case before December 1, 1885, and the plaintiffs in the second case since that time. The

eighth count in the declaration in each case alleged that the land in question was drained by a ditch entering a common drain, which crossed Brigham Street, a public way, and the Boston and Albany Railroad, and thence passed into the land of Timothy A. Smith; that the plaintiff had a right of drainage through this ditch, and thence through the common drain; that " the defendants have constructed a large number of drains or sewers, through and by which large quantities of water, which would not otherwise flow through said Brigham Street drain, were turned into said Brigham Street drain, so as to choke it up, so that the water from the land occupied by the plaintiffs could not flow through said Brigham Street drain, but was kept and retained upon the said land; and it was the duty of the defendants to keep said drain clear and unobstructed, but that the defendants carelessly and negligently allowed said drain to become obstructed, so that the water from the land occupied by the plaintiffs could not flow through said Brigham Street drain, but was kept and retained upon said land; and said sewers were so badly and negligently constructed, and so negligently and improperly managed and cared for, that the said Brigham Street drain became filled with earth and refuse, so that the water from the land occupied by the plaintiffs could not flow through said Brigham Street drain, but was kept and retained upon said land, and the water collected by said drains and sewers was turned into said Brigham Street drain and into the aforesaid ditch, and thereby was caused to flow upon the land occupied by the plaintiffs; and because said water was so collected by said defendants, said defendants were bound to keep said Brigham Street drain clear and unobstructed, but they allowed said drain to become so filled with earth and refuse that the water could not flow through said Brigham Street drain, but was kept and retained upon the land occupied by the plaintiffs; and the defendants have entered upon the land of said Smith, and have obstructed and hindered the flow of the water upon said Smith land, and made and placed upon said land a box or trough, which was made of boards or planks, for the water to flow in, but said box or trough was so small and narrow, that the water which passed through said drain under Brigham Street could not

flow through said box or trough, but was stopped and held back, so that the water was kept back and retained upon the land occupied by the plaintiffs, to the great injury of the plaintiffs' business," in a manner described.

At the trial of both cases together in the Superior Court, before *Staples*, J., there was evidence tending to prove the following facts.

From the plaintiffs' premises, which were situated south of Brigham Street in Westborough, extended a stone drain northerly over intervening land to that street, which was duly laid out as a town way in 1856, and there entered a culvert, which passed under and across the street, and, by permission of the Boston and Albany Railroad Company, under its road, north of that street, into the land of Smith, which lay still farther to the north, and there discharged into Cedar Swamp, so called. In May, 1876, at a meeting of the defendant town called for the purpose, a report of the road commissioners " upon removing obstructions and causing a free passage of water . . . under the railroad track over the land of T. A. Smith," was presented, reciting that the commissioners had examined the condition of the existing drain, and found it to be nearly or quite filled up, and almost useless ; that the drain could be opened, so as to afford temporary relief; that the culvert under Brigham Street and the railroad would have to be relieved, and that a plank drain eight by twelve inches in size should be built; that the whole work could be done for two hundred and fifty dollars, exclusive of cleaning the stone culvert under the street and railroad; that " Mr. T. A. Smith, over whose land the plank sewer would have to be laid, is willing to give the town a lease of the privilege for not exceeding five years, for the nominal sum of one dollar (with a proviso that no present right of the town or Mr. Smith shall be prejudiced by this payment). And the commissioners believe that, whether the town decides to accept and construct a more permanent work, as contemplated by the laying out of a sewer through Brigham Street, or not, at this time, it is needful for the health of the village that something should be done for immediate relief. The more permanent work cannot be accomplished to be of any service this season. That the more permanent work is demanded at an early day, no one who

understands the situation of things can for a moment doubt."
This report was adopted by the defendant town, and thereupon
Smith granted a lease or license to the town for a nominal
consideration, for the term of five years, to build the suggested
box drain on his land.  Immediately thereafter the road com-
missioners cleared out the culvert under the street and railroad,
and constructed and put in the box drain on Smith's land from
the northerly end of the culvert to an open ditch in the swamp,
and thenceforward the water passing through the culvert was
discharged into and through this drain.  The defendant town
from time to time constructed a system of sewers under dif-
ferent public streets for carrying off surface water, which with
other drains united and led into a sewer which was laid along
Brigham Street, and which discharged into and through the cul-
vert across it into the box drain.  The surface water by reason
of these sewers and drains was accumulated and discharged in
greater quantities into the culvert than before, and was caused
to flow more rapidly.  After the lease or license from Smith
expired, in May, 1881, the box drain remained in the same
place, without any objection on his part, and continued as be-
fore to serve the same purpose in receiving and carrying off
the discharge from the culvert.  Further negotiations were had
with Smith by the defendant town, and on November 8, 1887,
it was " Voted, that the town construct a wooden drain from
the Boston and Albany land, near Brigham Street, to Cedar
Swamp, . . . on the terms offered by said Smith to the town,
and to enlarge, if necessary, and perfect the drain from the
south side of Brigham Street."

The old drain was afterwards removed by the town and a
larger box drain put in its place, which, however, was not
completed until after these actions were brought.  The plaintiffs
had gained a prescriptive right to discharge the surface water
accumulating on their premises through the stone drain, cul-
vert, and box drain into the swamp.  Within six years the
stone drain and the culvert had become partially filled up on
several occasions, and the box drain had failed at times freely
to discharge the water flowing into it; from some or all of
which causes the water had been set back, and had overflowed
the plaintiffs' premises, causing the injuries in question.

The jury took a view. The defendant asked the judge to give, among others, the following instructions:

"1. There is no sufficient evidence to warrant a verdict for the plaintiffs on any of the counts.

"2. There is no evidence to show that the town was under any obligation, as against the plaintiffs, to keep the culvert or drain which crossed Brigham Street free from obstructions. . . .

"4. There is no evidence that the town had any right to go on the Smith land, at any time after the lapse of five years from 1876, and the mere permitting the first box drain to remain on that land, after the lapse of the five years provided for under the vote of 1876, would not be a tort, for which the plaintiffs could recover against the defendant, even though the box was too small, and obstructed the flow of the water, to the plaintiffs' injury.

"5. There is no evidence to show that the defendants are liable for any obstructions in the culvert under the railroad, nor in the stone culvert on Smith's land, nor for any obstructions in the culvert [stone drain] south of Brigham Street."

The judge refused so to instruct, but submitted the case to the jury on the eighth count alone, and instructed them, among other things, that the town had the right, in 1876, to go beyond the limits of Brigham Street, by permission of the railroad and of Smith, for the disposition of surface water; that the act of the town, in voting to put in the box drain over the land of Smith, was an act which the town had a right to do; that it had the right to make a contract with Smith for putting in the box drain for the purpose of disposing of its surface water, the arrangement being that such water should go into the culvert, and then be carried along in the stone drain under the railroad, and then through the box drain out into Cedar Swamp; that the five years would expire on May 12, 1881; that there was evidence which would warrant the jury in finding that there was a permission on the part of Smith, even after that time, in the fact that the box drain continued to be there, and continued to be used, without any evidence of objection, or order to the contrary, on his part; and that if the box drain as maintained by the town, the town having the right to put it in and to maintain it, was an obstruction to the surface

water, or caused it to be set back through the plaintiffs' drain on their land, and if such maintenance of the box was negligence on the part of the town, it would entitle the plaintiff to recover. "If the town negligently kept and maintained the box in the drain, it being an obstruction in the drain to the passage of water, and if, by reason of such negligence, the water flowed back through the plaintiffs' drain to their premises, and did them injury, the town would be liable therefor. . . . The town is bound to exercise reasonable care and diligence to keep the culvert free from obstructions, so that the surface drainage can be provided for. If the culvert under Brigham Street, a part of this drain, was negligently suffered by the town to be obstructed, so that it could not carry off this surface water which came down in the manner described, and it thereby was caused to flow upon the premises of the plaintiffs, no other objection existing to recovery, the defendant would be liable. . . . In disposing of it, the defendant must not negligently maintain the drain with which it is to be carried off, either as it respects the culvert, or by means of this box drain, if it was an obstruction. The doctrine extends further. If in so improperly constructing various drains other than the one in question, or negligently maintaining them, either by themselves or in connection with the culvert, the arrangement of the drains so constructed and maintained for disposing of the surface water being faulty, the town was negligent, then the town would be liable. . . . Under the eighth count, which alone goes to the jury in each case, the different causes are alleged as operating to produce a certain injury. If you should find that not all the acts alleged in the eighth count operated to produce injury, but that some of them did, you could still find on that count in favor of the plaintiffs."

The jury returned verdicts for the plaintiffs; and the defendant alleged exceptions.

*F. P. Goulding*, for the defendant.

*W. S. B. Hopkins*, (*J. E. Beeman* with him), for the plaintiffs.

HOLMES, J. These are two actions of tort, depending upon the same state of facts, to recover for the overflowing of the plaintiffs' land with water from the defendant's drain, and set back in the plaintiffs' drain. There was evidence tending to

show the following facts, which we assume to be true for the purposes of this decision.

The plaintiffs had gained a prescriptive right to discharge water from their land by a drain to a culvert running under Brigham Street, the Boston and Albany Railroad, and beyond, the water being carried from the farther side, of late years, by a box drain. There is a system of drains under different highways converging into one under Brigham Street, which also discharges through the same culvert. Some at least of these drains, including that through Brigham Street, were built by the defendant town, and belonged to it, and the town had a right to discharge through the culvert. The box drain on the other side of the culvert was built by the town upon land of one Smith, under a lease or license granted for a nominal sum. The lease expired more than six years before the date of the writs. But the box drain remained, and received the drainage as before, of which it was the necessary outlet. Smith did not object, but, it seems, had further negotiations with the town which have resulted in the building of a new drain since these actions were brought. The effect of the system of drainage was to bring down and to discharge through the culvert more water, and to discharge it more rapidly, than otherwise would have been the case. Within six years before the date of the writs, the culvert had been filled up more or less, the box drain had failed at times to discharge the water freely, and the drain on the plaintiffs' side of the culvert had become filled up. From some or all of these causes, the plaintiffs' land was flowed as alleged. The plaintiffs got verdicts under instructions allowing them to recover if the town had failed to use reasonable precautions in keeping the culvert free from obstructions, or had been guilty of negligence in maintaining a box drain of too small size, or in improperly constructing or negligently maintaining other drains that by themselves or in connection with the culvert made a faulty arrangement for disposing of the surface water, and thus had caused the damage.

These, we believe, are the only facts needing mention. The plaintiffs went to the jury on the eighth count alone, which made some of the defendant's requests for rulings immaterial, and we cannot adopt the defendant's construction of a further

remark to the jury, upon which he bases an important part of his argument. The jury were told, that, if they should find that not all the acts alleged in the eighth count operated to produce injury, but that some of them did, they could still find on that count in favor of the plaintiffs. We think that this was not intended, and could not have been understood, to mean that any one act alleged would be sufficient, but simply re-enforced what had been said already, and meant that less than all the acts alleged would be enough if the facts found by the jury satisfied the conditions of liability which had just been stated to them in detail.

If a private landowner collects surface water into a definite artificial channel, and discharges it upon his neighbor's land, he is liable to an action. *White* v. *Chapin*, 12 Allen, 516, 520. *Curtis* v. *Eastern Railroad*, 98 Mass. 428, 431. *Rathke* v. *Gardner*, 134 Mass. 14, 16. *Jackman* v. *Arlington Mills*, 137 Mass. 277, 283. *Cassidy* v. *Old Colony Railroad*, 141 Mass. 174, 179. And when the defendant would be liable for a direct discharge, we apprehend that he would be liable also if the water should be deflected upon the plaintiff's land by an obstacle to its direct course, in case the defendant either set up that obstacle, or negligently allowed it to remain when he ought to remove it.

We think, also, that it would not matter that some water would reach the obstacle if the defendant's drain were not there, provided the drain brings down more than otherwise would come, and causes the flooding of the plaintiff's land by this excess. *Curtis* v. *Eastern Railroad*, 98 Mass. 428, 431. Again, the ordinary liability of a tortfeasor who should stop a drain belonging to the plaintiff would exist if he should stop that drain by causing an otherwise lawful discharge of water into the outlet of the plaintiff's drain, the water thus discharged acting as a dam or obstacle to the plaintiff's water.

A town has no prerogative to flood the lands or to stop the drains of other landowners without paying for it, and if it does so without authority of law it is liable to an action of tort. *Hill* v. *Boston*, 122 Mass. 344, 358. See *Hitchins* v. *Frostburg*, 68 Md. 100.

It is true that a town is not liable for interrupting the flow of

surface water, or for discharging or turning surface water upon adjoining land to a considerable extent, if not through a definite channel, but this is because no landowner is liable for doing so. *Emery* v. *Lowell*, 104 Mass. 13, 16, 17, explaining *Barry* v. *Lowell*, 8 Allen, 128, and *Turner* v. *Dartmouth*, 13 Allen, 291. See *Gannon* v. *Hargadon*, 10 Allen, 106 ; *Franklin* v. *Fisk*, 13 Allen, 211 ; *Bates* v. *Smith*, 100 Mass. 181 ; *Morrill* v. *Hurley*, 120 Mass. 99. So a town is not liable to an action at common law for acts which are done under a statute, for instance, in the repair of highways, or, it seems, in the construction of sewers, for which the statute provides a remedy by petition. *Emery* v. *Lowell*, *ubi supra*, explaining *Flagg* v. *Worcester*, 13 Gray, 601. *Manning* v. *Lowell*, 130 Mass. 21, 22. *Nealley* v. *Bradford*, 145 Mass. 561. See *Hull* v. *Westfield*, 133 Mass. 433 ; *Perry* v. *Worcester*, 6 Gray, 544 ; *Benjamin* v. *Wheeler*, 8 Gray, 409, and 15 Gray, 486.

But the case is different when a city or town has caused the plaintiff's land to be flowed in a way which would be actionable as against a private person, and which cannot be taken to have been contemplated by the statute under which it acts, or to have been paid for by the compensation allowed in respect of the original scheme. Thus, in the instance of sewers, it is settled that, if the plaintiff can prove that the injury was caused by the negligence of the city, either in the original construction of the sewer, or in not keeping it free from obstructions, he may maintain an action against the city. *Emery* v. *Lowell*, 104 Mass. 13, 17. *Merrifield* v. *Worcester*, 110 Mass. 216, 221. *Murphy* v. *Lowell*, 124 Mass. 564. *Tindley* v. *Salem*, 137 Mass. 171, 172. *Stanchfield* v. *Newton*, 142 Mass. 110, 115. *Child* v. *Boston*, 4 Allen, 41, 52. So, if by a system of drains a city artificially diverts surface water from its natural course, and accumulates it upon the plaintiff's land in such quantities as to create a private nuisance, it may be liable to an action. *Manning* v. *Lowell*, 130 Mass. 21, 25. *Brayton* v. *Fall River*, 113 Mass. 218, 226. So if it negligently fails to keep a culvert under a highway in such condition as not to obstruct a natural stream. *Parker* v. *Lowell*, 11 Gray, 353.

*Emery* v. *Lowell*, and the cases following it, have re-enforced the distinction established in *Child* v. *Boston*, that while no

action lies for a defect or want of sufficiency in the plan or system of drainage adopted in the exercise of a quasi judicial discretion, under powers specially conferred by statute, the duty of keeping the common sewers in repair and free from obstructions after they have been constructed and have become the property of the city under such authority, is a ministerial duty, for neglect of which the city is liable to any person injured. The same is true of the duty actually to construct them with reasonable care and skill. And there is no difference in these duties whether the city has acquired the right to maintain the sewer by prescription, or has laid it under the statute. See *Gould* v. *Boston*, 120 Mass. 300, 306; *Phelps* v. *Mankato*, 23 Minn. 276, 279; *Bradbury* v. *Benton*, 69 Maine, 194.

It was not intended to overrule or to modify the well settled rule which we have stated, by the decision in *Kennison* v. *Beverly*, 146 Mass. 467. In that case the damage was caused by percolation from a catch-basin, which seems to have been incident only to an open gutter by the side of the highway. Assuming that there was evidence for the jury that there was such an artificial accumulation of water as to fall within the cases of *White* v. *Chapin* and *Manning* v. *Lowell*, and that the trouble was due to negligence in construction rather than to the plan adopted, still it may be that the town was not liable, in the absence of such evidence that it did the work as was found in *Deane* v. *Randolph*, 132 Mass. 475, *Waldron* v. *Haverhill*, 143 Mass. 582, and *Doherty* v. *Braintree*, 148 Mass. 495, 497. It may be that defects in such a catch-basin are to be regarded as defects in surface drainage within the limits of the highway, and therefore as defects in the repair of the highway, the charge of which is committed by statute to the highway surveyors. Highway surveyors in the performance of their statutory duties are held to be public officers, and not agents of the town, partly because of the town's want of control over them, and partly because the duty to repair the surface of highways is regarded as a public duty, from which the town derives no special advantage in its corporate capacity. *Walcott* v. *Swampscott*, 1 Allen, 101. *Barney* v. *Lowell*, 98 Mass. 570, 571. *Tindley* v. *Salem*, 137 Mass. 171, 174. *Blanchard* v. *Ayer*, 148 Mass. 174, 176. For these and perhaps other reasons, it is held that towns are

not liable for defects in such repair apart from statute, except in such cases as we have mentioned.   *White* v. *Phillipston,* 10 Met. 108, 110.   *Bigelow* v. *Randolph,* 14 Gray, 541, 543.   *Oliver* v. *Worcester,* 102 Mass. 489, 499.   *Hill* v. *Boston,* 122 Mass. 344, 350.   It seems that this irresponsibility is not confined to non-feasance or to damage in the highway to persons travelling there, but extends to cases of misfeasance, — see *Walcott* v. *Swampscott,* 1 Allen, 101;   *Tindley* v. *Salem,* 137 Mass. 171 ; *Manners* v. *Haverhill,* 135 Mass. 165, — and to injury to persons or property outside of the highway.   *Holman* v. *Townsend,* 13 Met. 297.   *Smith* v. *Dedham,* 8 Cush. 522.   See *Benjamin* v. *Wheeler,* and *Turner* v. *Dartmouth, ubi supra ; Brailey* v. *Southborough,* 6 Cush. 141.

But it is settled by the cases which we have cited (*Emery* v. *Lowell,* etc.) that there is no such immunity with regard to sewers and main drains.   These belong to the cities and towns by statute;  Pub. Sts. c. 50, § 1;  and although the road commissioners, who are given authority to maintain them by the same section, are probably no more the agents of the town than highway surveyors, when exercising highway surveyors' duties, (*Barney* v. *Lowell, ubi supra ; Nealley* v. *Bradford,* 145 Mass. 561, 564,) still perhaps they have not so exclusive an authority over sewers, and at all events the interest of the towns in the sewers is so distinct from that of the public at large that they are held with reason to the ordinary responsibilities of owners. See further *Oliver* v. *Worcester,* 102 Mass. 489, 500 ; *Haskell* v. *New Bedford,* 108 Mass. 208 ; *Hand* v. *Brookline,* 126 Mass. 324.

A further objection is taken by the defendant with regard to the box drain, that a tenant is not liable to third persons for damage subsequently caused by a structure lawfully erected, and simply left by him upon his landlord's premises after the expiration of his lease.   We certainly are not disposed to deny that proposition when the circumstances are such that the tenant may be held to have abandoned the structure, and the landlord may be held to maintain it.   *Blunt* v. *Aikin,* 15 Wend. 522. *Waggoner* v. *Jermaine,* 3 Denio, 306.   See *Clifford* v. *Atlantic Cotton Mills,* 146 Mass. 47, 49.   But the tenant's liability will continue if he still maintains the structure ; and in a case like this, the question whether he does so or not will depend upon

evidence which necessarily is slight, so far as it is drawn from subsequent acts. If the town abandoned the drain, natural causes would still carry water through it as before; if it maintained it, there was nothing in particular for the town to do, unless the drain should need repairs.

Perhaps the strongest evidence is found in the original transaction. Whether the leave to maintain the drain for five years given by Smith was a lease or a license, it is very plain that the limit of five years was fixed simply in order to preserve rights. Neither party can have expected that the drain was to be given up at the end of that time. The case is wholly different from the ordinary one of a tenant leaving a fixture. The same need which led to the agreement was likely to continue, and it would seem from the report adopted by the town that already the box drain was the necessary outlet of the system of drains and sewers belonging to the town heretofore mentioned. It is a fair inference, that what should be done later was left to further negotiations, which seem from the vote of November 8, 1887, to have been had, and to have been successful. So far as the town added to its system of drains, it showed its intention to continue to use the box drain. It did continue, in fact, to discharge the water from that system through the box drain, and it negotiated with Smith, as we have said.

There was ample evidence that the town used the box drain after the five years. What would be the liability for bringing down water against an obstacle not under the defendant's control under circumstances otherwise like the present, we need not consider. Any insufficiency that there may have been in the drain seems to have been due to negligence in its construction or maintenance, not to a defect in the original plan. See *Hill* v. *Boston*, 122 Mass. 344, 375; *Perry* v. *Worcester*, 6 Gray, 544, 547.

*Exceptions overruled.*