HARRIETTE F. NEVINS *vs.* CITY OF FITCHBURG.

Worcester.     October 3, 1899. — November 29, 1899.

Present: HOLMES, C. J., KNOWLTON, LATHROP, BARKER, & LORING, JJ.

*Mills — Sewer — Private Nuisance — Action.*

A mill-owner, whose tail-race runs under a road by means of a culvert and is on his land, may maintain an action against a city for entering into such watercourse a common sewer, built through the road under an order of the mayor and aldermen of the city which ends the sewer at the raceway, and causing a nuisance.

TORT, for entering a common sewer into the plaintiff's private watercourse and causing a nuisance. The answer alleged, among

other things, that the sewer was constructed under authority of the Public Statutes. Trial in the Superior Court, without a jury, before *Braley*, J., who reported the case for the determination of this court, in substance as follows.

Prior to 1845, the predecessor in title of the plaintiff owned a mill called the " Duck Mill," now situated within the municipal limits of the defendant near the Nashua River, and used for manufacturing purposes. As a part of the power used to run its machinery, the mill used the waters of the river. These waters were conducted on to the land by a channel leading from the river above the dam, thence passing through the channel and over the wheel of the mill, through a private raceway back below the dam into the river. This artificial channel, called a tail-race, was built solely for use in connection with the mill, and has been so used ever since. The tail-race crosses the Bemis Road, through a culvert. This is an old road that has become a public way by prescription. The right so to cross this road was granted by William Bemis, so far as he had any right to make such grant; and this use of the road, that is, by building a culvert under it for the passing of water, has never been interfered with in any way by the town of Lunenburg or the town or city of Fitchburg, within whose municipal limits the tail-race was or now is.

The plaintiff succeeds to the property by way of inheritance, and has operated the mill at least since 1890. Bemis Road runs in front of the property of the plaintiff, crossing the Nashua River, and thence easterly to Lunenburg, and westerly to a street called Water Street, and thence across Water Street to the almshouse, that portion of the street above Water Street being known as Wanoosnoc Road. Starting just above the almshouse and flowing southerly and easterly is a brook that empties into the river at quite a distance southerly of Bemis Road. Leading out of Bemis Road southerly is Falulah Street sloping towards the brook. For some distance westerly above Water Street and extending up towards the almshouse, then sloping easterly to the Nashua River, is a large area of land, which, prior to 1891, drained into the Nashua River, the water flowing over the surface to the river on the northerly portion of the tract, and on the southerly portion flowing largely into the

brook, and thence into the Nashua River. No portion of this surface water affected in any way the use of the tail-race by the plaintiff.

On April 7, 1891, William Baldwin and others petitioned the mayor and aldermen of the defendant city that a sewer be laid out and constructed from the almshouse through Wanoosnoc Road, then across Water Street, thence through Bemis Road to Nashua River. Due proceedings were had on this petition, and on May 19, 1891, the board of aldermen passed the following order: " Whereas : it having been and it hereby is adjudged to be necessary for the public health and public convenience that a main drain and common sewer be laid out and constructed in Wanoosnoc and Bemis Roads as follows, to wit: Beginning at the almshouse, thence running through Wanoosnoc and Bemis Roads to the raceway of the Duck mill. Ordered: that the sewer be built of fifteen inch sewer pipe in Bemis Road and of twelve inch pipe in Wanoosnoc Road, and that the work be done under the supervision of the superintendent of streets."

Acting under this order, the superintendent of streets proceeded to construct a sewer from the almshouse through Wanoosnoc Road across Water Street into Bemis Road, and through Bemis Road to the culvert under the road through which the plaintiff's raceway ran, so that the sewer, though built and discharging within the limits of Bemis Road, emptied into the raceway. The sewer was properly constructed, and it did not appear that it was negligently or defectively built. At the time the sewer was constructed, the superintendent of streets, as the surveyor of highways, for the purpose of repairing and keeping in repair Bemis Road below Water Street, and not as a part of the construction of the sewer, built and constructed catch basins upon each side of Bemis Road and connecting with the sewer.

Subsequently, additional catch basins were built by him as surveyor and so connected. By the building of these catch basins in connection with the sewer, surface water to a large and appreciable amount which would otherwise drain into the brook, has been diverted, collected, and passed into the sewer, so that the sewer discharges into the raceway of the plaintiff more water and sand by way of surface drainage than naturally would be

discharged there or into the Nashua River by reason of the natural watershed.

Shortly after the sewer was built, large accumulations of sand were brought down by the sewer and deposited in the tail-race. In consequence of this, the tail-race was choked up and the water was set back upon the plaintiff's mill wheel, thereby causing appreciable diminution and loss of power, and this has continued to a greater or less extent up to the time of bringing this action.

On October 15, 1895, the plaintiff gave notice to the mayor and aldermen of the defendant city, that the sewer " constructed on Bemis Road, emptying into the tail-race, a private watercourse leading from her wheels in the Fitchburg Duck Mills, caused great damage to that property by depositing earth and other sediment in the tail-race, and preventing a free discharge of the water from the water wheels," and asking that the board cause the removal of the sewer outlet. On May 28, 1896, a like notice and request was given to the mayor and aldermen.

No action was taken thereon, and on May 27, 1897, this action was brought. Under the notice of the plaintiff to the defendant of October 15, 1895, reasonable examination and inspection of the working of the sewer would have made the defendant city or its officials charged with such matters aware of the additional water and sand deposited in the plaintiff's tail-race by the action of the sewer, which could have been remedied. It was agreed between the parties that if the plaintiff was entitled to recover, damages should be assessed in the sum of thirty dollars.

The defendant asked the judge to rule that, upon the foregoing facts as matter of law, the plaintiff was not entitled to maintain her action. The judge refused so to rule; and found and ordered judgment for the plaintiff in the sum of thirty dollars.

If the ruling was right, the judgment was to be affirmed; otherwise, judgment was to be entered for the defendant.

*E. P. Pierce,* for the defendant.

*W. S. B. Hopkins,* (*C. E. Ware* with him,) for the plaintiff.

LATHROP, J. There is nothing in the bill of exceptions to show by what authority the board of aldermen passed the vote in this case authorizing the laying out of the sewer. The

answer sets up that it was done under the Public Statutes, and the defendant in its brief states inferentially that it was under the Pub. Sts. c. 50, which, by § 1, gives to the mayor and aldermen of a city the right to lay, make, and maintain such main drains or common sewers as they adjudge to be necessary for the public convenience, or the public health, through the lands of any persons or corporations. Assuming that the vote was passed by the board of aldermen under this statute, the defendant concedes that if a board of public officers should decree that a sewer should be so constructed that it would discharge upon private lands, a remedy by injunction or otherwise could be afforded, because the act done or to be done would be without the jurisdiction of the board, and would in effect be the taking of private property for public uses without proper condemnatory proceedings.

We think that this concession was properly made. Thus in *Hill* v. *Boston*, 122 Mass. 344, 358, it was said by Chief Justice Gray : "So if a city, by its agents, without authority of law, makes or empties a common sewer upon the property of another to his injury, it is liable to him in an action of tort," citing among other cases *Proprietors of Locks & Canals* v. *Lowell*, 7 Gray, 223, and *Haskell* v. *New Bedford*, 108 Mass. 208.

In *Proprietors of Locks & Canals* v. *Lowell*, it was held that a canal corporation could maintain an action of tort against a city for laying down sewers and drains through lands purchased by the corporation for the use of their canal, and emptying into the canal, although the city was authorized by its charter, " to cause drains and common sewers to be laid down through any streets or private lands," and though the canal was constructed in the channel of an ancient watercourse. See also *Boston Rolling Mills* v. *Cambridge*, 117 Mass. 396.

So, too, if a sewer is legally laid out and constructed by a city, but is maintained in such a manner as to create a private nuisance, an action at law may be maintained against the city by the persons injured. *Haskell* v. *New Bedford*, 108 Mass. 208. *Brayton* v. *Fall River*, 113 Mass. 218.

It has also been held that if a city by a system of drains artificially diverts surface water from its natural course, and accumulates it upon the plaintiff's land in such quantities as to create

a private nuisance, it is liable to an action. *Brayton* v. *Fall River*, 113 Mass. 218, 226. *Manning* v. *Lowell*, 130 Mass. 21, 25. *Bates* v. *Westborough*, 151 Mass. 174, 182.

In the case at bar, the plaintiff owned the land on each side of the Bemis Road, and presumably owned the fee of the road. The tail-race ran under the road by means of a culvert, and was on the plaintiff's land. This condition of things existed prior to 1845. The culvert had never been interfered with by the defendant or by the town of Lunenburg, in whose municipal limits it once was. We need not consider what would have been the rights of the plaintiff, if the city had seen fit to extend its sewer so as to injure the plaintiff's rights in the tail-race, as nothing of this sort was attempted. The order ends the sewer at the raceway. So long as the city did not lay a sewer across the tail-race, the plaintiff had a right to the use of the land under the way (*Allen* v. *Boston*, 159 Mass. 324, 335) ; even if it had not acquired a prescriptive right so to use it, the defendant had no right to have its sewer end on the plaintiff's land, and pour the sewage thereon. The order, therefore, was of no effect, and the judge rightly ruled that the action could be maintained.

*Judgment affirmed.*