## SAUL S. ARICK vs. CITY OF WORCESTER.

Worcester. September 23, 1930. — November 24, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Municipal Corporations*, Liability in tort, Sewer.

At the trial of an action of tort against a city founded upon alleged negligence of the defendant in maintenance of a sewer catch basin in front of a store of the plaintiff by reason of which the sewer became clogged and goods of the plaintiff were damaged by water, it appeared that the damage was caused in a rain storm on the night of November 3 or 4, and there was evidence that there had been a four or five day storm in October; that the catch basin had not been cleaned since September 8; that complaints of its condition had been made following the October storm; that the procedure upon such complaints was for the foreman to send a man to look over the catch basins and to report back to the foreman, who then, if he had any doubt, went down himself and made an inspection; that, if he was satisfied that the catch basin was clear, he signed a report and sent it in; that every report indicated that work was done on the catch basin; that when the report indicated that the catch basin was freed, it merely showed that "an inspection was made and that the catch basin might have freed itself after the water had subsided in the main carrier so there was nothing that they could do to make it go any faster from that basin"; that, if the complaint was unfounded, the foreman would put a notation on the complaint that he found nothing wrong, or something to that effect: there was nothing in the report which indicated that the complaint made was unfounded or untrue. Counsel for the plaintiff excepted to a refusal by the trial judge to allow the plaintiff to ask the following question: "So that if these reports contain a complaint, contain a statement to the effect a catch basin was blocked, they were true?" The plaintiff then offered a complaint in evidence, and the judge granted permission to counsel for the plaintiff to read everything that the report contained except the complaint made, and the plaintiff excepted. There also was evidence produced by the plaintiff that the men employed by the sewer department used long sticks or iron poles to test the condition of the catch basin; that before November 1 an employee of the plaintiff had noticed that the catch basin "seemed to be quite full with dirt," and that later, as the result of a telephone talk with the sewer department, some one had gone down several days before the flood and worked about the catch basin with long poles. The judge ordered a verdict for the defendant. *Held*, that

(1) There was no error in the exclusion of the question and of the substance of the complaint;

(2) The verdict for the defendant properly was ordered.

Tort for damages caused by water to merchandise in a store of the plaintiff by reason of the clogging of a sewer of the defendant alleged to have been caused by negligence of the defendant in its maintenance. Writ dated December 7, 1927.

In the Superior Court, the action was tried before *P. J. O'Connell*, J. The witness Skiest, referred to in the opinion, was called by the plaintiff and was an employee of his. Material testimony of Gladys Arick Seder, a daughter of the plaintiff, referred to in the opinion, was that it rained four or five days steadily in October, 1927; that she noticed some men working round the sewers poking around the catch basin directly in front of the store after the October storm; that "she did not observe whether the catch basin in front of the store was cleaned out after the rainfall in October and before the rainfall in November . . . as far as she knew, it was not cleaned out." She further described the storm of the night of November 3, 4, and stated that on the morning of November 4 she observed the catch basin in front of the store and that it was almost entirely clogged with mud, sand or dirt coming down from the hill.

Other material evidence and rulings by the judge are described in the opinion. There was a verdict for the defendant. The plaintiff alleged exceptions.

*S. A. Seder*, (*S. Lurier* with him,) for the plaintiff.

*A. W. Blackmer*, (*W. D. Allen* with him,) for the defendant.

Pierce, J. This is an action of tort for damages sustained by the plaintiff because of water flowing into his cellar. The plaintiff's declaration alleged that on November 3, or 4, 1927, the merchandise stored in the basement of the premises occupied by him was damaged by rain, water and dirt which flowed into said cellar by reason of the failure of the defendant properly to care for, maintain and keep free from obstruction, the sewers, catch basins and ways adjacent to the property occupied by the plaintiff. The answer of the defendant was a general denial. Upon the conclusion of the evidence, on the motion of the defendant, the judge directed a verdict for the defendant.

The case is before this court on the exceptions of the plaintiff to the order of the judge that a verdict be returned for the defendant and to his exclusion of statements made in the reports of complaints.

At the argument on his bill of exceptions the plaintiff properly conceded that the defendant was not liable because of any defect or inadequacy in the plan of sewers. *Pevear* v. *Lynn,* 249 Mass. 486, 488. He placed his right upon his ability to prove that the defendant was negligent in its maintenance of two catch basins — in the bill of exceptions referred to as catch basins " A " and " B " — which were located directly in front of his store, and that because of the defendant's said want of due care on November 3 and 4, 1927, the two catch basins were clogged and, being clogged, at the time of a rain storm on those days caused the rain water to overflow the sidewalk and come into the basement and upon the merchandise of the plaintiff therein contained.

If the evidence in its aspect most favorable to the plaintiff warranted a finding of negligent maintenance of the catch basins and resulting damage to the plaintiff, the case should have been submitted to the jury. *Child* v. *Boston,* 4 Allen, 41. *Hill* v. *Boston,* 122 Mass. 344, 358. *Bates* v. *Westborough,* 151 Mass. 174, 183.

The evidence for the plaintiff contained in the bill of exceptions discloses that during November, 1927, and prior thereto, the plaintiff conducted a wholesale dry goods business at 3 Water Street, Worcester, Massachusetts; that there was merchandise in the store on November 3 and 4, 1927, and it was kept on the floor in the store and also in the cellar; that on November 3 a rain storm began in the evening and became violent after midnight; that in this period five inches of rain fell; that at two o'clock in the morning immediately in front of the store the road and gutter were full of water, and the sidewalk was covered to the door of the store; that there was water inside on the floor and to a depth of five or six feet in the cellar; that water came into the cellar not directly from the street but from the store next door, into which the water had flowed

right from the sidewalk through the basement window and thence through a broken wall to the cellar of the plaintiff. There was evidence of substantial damage to the merchandise of the plaintiff from the overflow of water from the street and sidewalk.

The evidence further discloses that there were three catch basins on Water Street in the immediate vicinity of the plaintiff's premises, two, "A" and "B," directly in front, and one on the opposite curb; that it is not customary to put two catch basins so near together in a street, but "A" and "B" were put there because the locality is very bad for surface water condition — all the streets carry water into the square — and extra catch basins were put in so in case one basin became clogged the other basin could take the load; that catch basins "A" and "B" each have two traps which are connected to the "same one pipe" leading to the main sewer; that these catch basins were built in accordance with a standard plan or type and when properly functioning were intended to take in all surface water that flowed by or into them; that catch basin "A" is between eight and nine feet deep, and over its top there is a capstone and a grating; that the water falls into the catch basin and rises and flows through the trap or traps; that from the bottom of the catch basin to the bottom of the frame, which is inside, is about seven and one half feet; that the catch basin is about six feet in diameter at the bottom and about three feet from the top it starts to turn in — that is the diameter of the inside; that the trap is below the place where it begins to draw in — about five feet from the bottom; that catch basins get filled with dirt and all kinds of mud that collect from the street, and if the dirt and sand and refuse collect above the pipe that leads to the outlet, which is the trap, the water can no longer flow out but fills the catch basin to the top; that the distance from the trap or outlet to the top of the sewer is between two and two and one half feet.

There was further evidence that the section where catch basins "A" and "B" were located was a source of particular complaint; that these catch basins were "susceptible

of collecting a great quantity of dirt and sand and . . . required a little more attention than a catch basin that was located on a level street;" that the men employed by the sewer department use long sticks or iron poles to test the condition of the catch basin, " free it if it is blocked or anything of that sort," and that they report these tests and examinations; that catch basins " A " and " B " were not cleaned from September 8, 1927, until November 5, 1927, when two loads of dirt were taken out of them; that before November 1, 1927, a witness, Skiest, noticing that catch basin " A " " seemed to be quite full with dirt," made a complaint, and later, as the result of a telephone talk with the sewer department, some one came down several days before the flood and worked about the catch basin with long poles.

There was evidence offered of five complaints with reference to these catch basins from October 19, 1927, to November 4, 1927, inclusive. The procedure upon such complaints was for the foreman to send a man down to look over the catch basins and report back to the foreman, who then, if he had any doubt, went down himself and made the inspection. If he was satisfied the catch basin was clear he signed the report and sent it in. Every report indicated that work was done on the catch basin. When the report indicated that the catch basin was freed, it merely showed that " an inspection was made and that the catch basin might have freed itself after the water had subsided in the main carrier so there was nothing that they could do to make it go any faster from that basin." If the complaint was unfounded, the foreman would put a notation on the complaint that he found nothing wrong, or something to that effect, that is, there was nothing in the report which indicated that the complaint made was unfounded or untrue. Counsel for the plaintiff excepted to the refusal of the judge to allow the plaintiff to ask the following question: " So that if these reports contain a complaint, contain a statement to the effect a catch basin was blocked, they were true? " Upon a further offer of this complaint the

judge granted permission to counsel for the plaintiff to read everything that the report contained except the complaint made, and the plaintiff excepted.

The exclusion of the question and of the substance of the complaint was right. The fact that the catch basins " A " and " B " did not receive the surface water or discharge through the traps the water received in the basin on the day of a complaint in itself was not evidence of an improper maintenance of the catch basins prior to the complaint or evidence that a later overflow was attributable to an improper maintenance as distinguished from an inadequate form of basin. There is nothing in the contention that the complaints were statements of fact which were " admissable in evidence as tending to show the truth of the facts stated," because the foreman had a duty to deny a complaint through his report if it was unfounded or untrue. It is sufficient to say there is nothing in the record to warrant a finding of such duty. We find nothing in the testimony of the witness Gladys Arick Seder which would warrant a jury in finding that the defendant was negligent in maintaining the catch basins from which the water overflowed onto the plaintiff's premises.

*Exceptions overruled.*