MARY TYLER *vs.* JOHN F. STURDY.

Public footways may be created by dedication in this Commonwealth.

TORT for breaking and entering the plaintiff's close in Attleborough. At the trial in the superior court, before *Scudder*, J., the defendant admitted his liability to nominal damages unless he had a right of way or a right to pass over the plaintiff's land and contended that a public footpath existed over it, by dedica-

tion and use, prescription and immemorial usage, between two roads, and that, as one of the public, he had a right to travel on this footpath, which was wherein the alleged trespass consisted. His counsel stated to the jury the various modes in which rights of way may lawfully be acquired, and that he should contend that the defendant had acquired such a right over the land in any mode which the evidence might warrant. A report of the evidence is not necessary to an understanding of the point of law decided.

" The plaintiff contended that a footpath for public use over the land of another could not be acquired in this Commonwealth by dedication, use or prescription, and that the evidence would not warrant a jury in finding a right of way in the defendant on any ground. The defendant contended that such right of way could be acquired by dedication, use or prescription, and that the evidence was sufficient to establish such way, and also a private way in himself by prescription and user, and a right of way as appurtenant to his estate."

The case was reported by consent of the parties, before verdict, for the consideration of this court, with the agreement that if, in its opinion, a jury would be warranted in finding that the defendant had a right of way or of passing over the plaintiff's land, judgment should be rendered for the defendant ; otherwise, judgment was to be rendered for the plaintiff for one dollar damages and costs.

*E. Ames*, for the plaintiff.

*E. H. Bennett & J. Daggett*, for the defendant.

GRAY, J. By the common law of England, foot ways for the use of the public were one of the kinds of public ways, and might be created by dedication or prescription. Co. Lit. 56 *a*. *Thrower's case*, 1 Ventr. 208. *The Queen* v. *Saintiff*, Holt, 129 ; *S. C.* 6 Mod. 255. *The Queen* v. *Cluworth*, 6 Mod. 163 ; *S. C.* 1 Salk. 359 ; Holt, 339. *Rex* v. *Burgess*, 2 Burr. 908. *Mercer* v. *Woodgate*, Law Rep. 5 Q. B. 26. This part of the English law, being manifestly adapted to the condition of our ancestors upon their settlement of this country, was part of the common law which they brought with them, claiming it as their birthright.

*Pawlet* v. *Clark*, 9 Cranch, 292, 333. *Storer* v. *Freeman*, 6 Mass. 435, 438. *Hobbs* v. *Lowell*, 19 Pick. 405. *Commonwealth* v. *Churchill*, 2 Met. 118. As it required no legislation to give it effect, we should not expect to find many traces of it upon the statute books; but it is recognized by clear implication in the ordinances of the Colony of Plymouth, and its adoption is reasonably to be inferred from the early records of Massachusetts, the acts of the Province after the union of the two colonies under one charter, and the statutes of the Commonwealth.

The general court of the Plymouth Colony in 1627, in the earliest ordinance for the allotment of lands, provided " that the old paths be still allowed, and that every man be allowed a convenient way to the water wheresoever the lot fall." In 1633 the same court passed this ordinance : " That whereas divers footpaths lie through men's inclosures, and that great damage hath and may come to many by pulling up the same for driving of cattle or the like, it is ordered that no man pull up any but upon extreme necessity, nor then without leave." And in 1639 a more specific ordinance was made, and was reënacted in 1650 and 1671, providing " that if an highway be wanting in any township of this government, upon due complaint, that then the governor or any of the assistants empanel a jury, and upon oath charge them to lay out such ways, both for horse and foot, as in conscience they shall find most beneficial for the commonwealth, and as little prejudicial as may be to the particulars ; and that all old paths shall be allowed, except other provision be orderly made ; and that when there are allowed footpaths over any man's ground which is fenced up, the owners of such fences shall make convenient stiles or gates." Plym. Col. Laws (ed. 1836) 30, 34, 64, 277.

In the Colony of Massachusetts, the general court in 1632 required the town or plantation of Saugus " to make and continually to keep a good foot bridge " over the Saugus River, and in 1641 ordered " that a foot way should be set out through Noddle's Island," now East Boston. 1 Mass. Col. Rec. 100, 330. Upon the records of the town of Boston, it appears that at a meeting of the selectmen on April 29, 1639, " it was agreed upon,

together with the consent of Mr. William Peirce, that there shall be a passage of seven feet wide from the lower part of Mr. Keayne's garden at his mud wall house unto the creek near Edward Bendall's new house, to be fenced out by the said William Peirce out of his garden and at his charges on the one side, and at the charges of the said Edward Bendall on the other side, and so to be maintained." This would seem to be the same way which appears in the earliest list of "the streets, lanes and alleys in the town of Boston," (made by the selectmen in 1708 in obedience to votes of the town, and entered on the town records,) under the name of Peirce's Alley, leading from King (now State) Street to the Corn Market (now Market Square), and which under various names, the most modern of which is Change Alley or Change Avenue, has been used by the public as a footpath to the present day. The covered footpath which leads from the head of Washington Street into Brattle Street was formerly known as Boylston's Alley, and is mentioned by that name by several of the witnesses at the Trial of the British Soldiers in 1770, as appears in the printed report of that trial. The narrow street, now called Province Street, leading from School Street, opposite where the City Hall now stands, to Bromfield Street, in the rear of the Old Province House, was formerly known as Governor's Alley, and was evidently a mere footpath at first; for the preamble to the Prov. St. of 1772 (13 Geo. III.) *c.* 3, granting two strips of the Province land towards widening the same, recites a petition from inhabitants of the town representing "that Governor's Alley is become a great thoroughfare and passage as well for horses as for people, but by reason of the narrowness thereof the lives of his majesty's subjects passing through the same is greatly endangered." Mass. Perpet. Laws (Supplts. to ed. 1759), 627. Many other ancient foot ways in Boston are still in common use, and, although the indefiniteness of the town records and the frequent changes of names make it difficult to trace their history, it is quite improbable that most of them were laid out by any public authority.

The Prov. St. of 1692–3 (4 W. & M.) *c.* 13, entitled "an act for building with stone or brick in the town of Boston, and pre-

venting fire," authorized, " in all void and unbuilt places which shall be improved for building, or when at any time any total consumption or desolation shall happen in any street or lane within the said town," the justices of the peace and selectmen " to stake and lay out such streets, ways and passages as may be most for the convenience and accommodation of the place, as also, when any desolation has happened, to regulate and enlarge other narrow and crooked passages," allowing damages, to be assessed by a jury, to the owners of lands " taken away or lessened thereby." 1 Prov. Laws (State ed.) 42 ; Mass. Perpet. Laws (ed. 1759) 1.   Further provision for the assessment of damages in such cases was made by the Prov. St. of 1764 (3–4 Geo. III.) c. 8 ; Mass. Perpet. Laws (Supplts. to ed. 1759) 451.

The Prov. St. of 1773 (13 Geo. III.) c. 4, authorized the selectmen of Boston to set up and maintain lamps " for enlightening the streets, lanes, alleys and passageways," and to remove any posts or signs therein, which in their judgment might " tend to intercept or in any ways lessen the light in said lamp."   Mass. Temp. Laws (Supplts. to ed. 1763) 504.   That act, originally made for five years, was continued in force by successive statutes until 1797, when it was made perpetual.   St. 1796, c. 69.

By the Sts. of 1799, c. 31, § 3, and 1804, c. 73, the selectmen of Boston were authorized to widen " any street, lane or alley in said town," " and the same street, lane or alley, being recorded in the town books, shall be thereby established as such."   2 Special Laws, 339.   3 Ib. 506.   And the St. of 1816, c. 90, affirmed their authority " to discontinue any street, lane or alley of the said town, or to make any alteration in the same, in part or in whole."

The general statutes of the Province and Commonwealth, authorizing the laying out of public ways by municipal and county officers, have been confined to highways and town ways for the use of passengers with their horses, teams and carriages, or droves of cattle, and have not included foot ways.   Prov. Sts. 1693–4 (5 W. & M.) c. 6 ; 1 Prov. Laws, 136 ; Mass. Perpet. Laws, 43 Anc. Chart. 267.   Sts. 1786, cc. 67, 81.   Rev. Sts. cc. 24, 25 Gen. Sts. cc. 43, 44.   And the provision of the St. of 1846, c. 203

reënacted in the Gen. Sts. *c.* 43, § 82, that no way opened or dedicated to the public use, which has not become a public way, shall be chargeable to a city or town as a highway or town way, unless laid out or established by the city or town as provided by statute, is equally limited in its application. *Oliver* v. *Worcester*, 102 Mass. 489, 495. It has been adjudged by this court that, before that statute, highways and town ways might be established in this Commonwealth by dedication as well as by prescription. *Hobbs* v. *Lowell*, 19 Pick. 405. *Valentine* v. *Boston*, 22 Pick. 75. *Larned* v. *Larned*, 11 Met. 421. *Commonwealth* v. *Belding*, 13 Met. 10. *Jennings* v. *Tisbury*, 5 Gray, 73. *Commonwealth* v. *Old Colony & Fall River Railroad Co.* 14 Gray, 93. The principle of those decisions is still applicable to any kind of public way which is not within that statute. And public foot ways must be deemed to be included in the statutes providing for the abatement as nuisances of buildings and fences encroaching upon any "highway, town way, street, lane or alley," and prescribing the time during which such erections must continue in order to be deemed the true boundaries of such ways. Prov. Sts. 1698 (10 W. III.) *c.* 2; 1734 (7–8 Geo. II.) *c.* 3; 1 Prov. Laws, 311; Mass. Perpet. Laws, 75, 273; Anc. Chart. 308, 404. Sts. 1786, *c.* 67, § 7; *c.* 81, § 6. Rev. Sts. *c.* 24, § 61. Gen. Sts. *c.* 46, § 1.

It was assumed in *Hemphill* v. *Boston*, 8 Cush. 195, and *Danforth* v. *Durell*, 8 Allen, 242, that public foot ways might be created by dedication in this Commonwealth. And the existence of such ways by dedication or prescription has been recognized in other states. *Chadwick* v. *McCausland*, 47 Maine, 342. *Nudd* v. *Hobbs*, 17 N. H. 524. *Gowen* v. *Philadelphia Exchange Co.* 5 W. & S. 141. 3 Kent Com. (6th ed.) 451 note.

The evidence introduced at the trial was ample to prove a public foot way by dedication across the plaintiff's close, and it is therefore unnecessary to consider the other grounds of defence.

*Judgment for the defendant.*