BOSTON AND ALBANY RAILROAD COMPANY *vs.* CITY OF BOSTON & others.

Suffolk.   Nov. 18, 1884. — Sept. 4, 1885.   FIELD & COLBURN, JJ., absent. DEVENS, J., did not sit.

Under the Pub. Sts. *c.* 112, § 125, authorizing a highway or town way to be laid out across a railroad previously constructed, a footway may be laid out.

W. ALLEN, J.   This is a petition for a writ of certiorari, by which the petitioner seeks to quash the proceedings of the board of street commissioners of the city of Boston in laying out a footway over the petitioner's railroad, and crossing its location by means of a bridge.   Several objections to the proceedings of the commissioners are stated in the petition, but the only one which has been argued, and which it is necessary to discuss, is in these words: " Because no town or city, or board of street commissioners, is authorized by law to lay out a footway over or across a railroad."

The Pub. Sts. *c.* 112, § 125, provide that " a highway or town way may be laid out across a railroad previously constructed, when the county commissioners adjudge that the public convenience and necessity so require."   The petitioner contends that the only authority by which a public way can be laid out across a railroad is derived from, not merely restricted and regulated by, this statute; and that a footway is neither a highway nor a town way, within the meaning of the provision.   We think that neither proposition can be sustained; but the former is material only as bearing upon the latter.

By the common law a public footway is a highway, and the term " highway " includes a footway.   *Tyler* v. *Sturdy*, 108 Mass. 196, and cases cited.   Bac. Abr. Highways, A.   Town

ways are within the common law definition of a highway, and the word "highway" is sometimes used in the statute to include a town way. *Jones* v. *Andover*, 6 Pick. 59. The difference in the meaning of the words, when used distinctively in the statutes, is that "highway" designates a public way, original jurisdiction to lay out which is in the county commissioners, and "town way" a highway laid out in proceedings in which a town or city has original jurisdiction. *Blackstone* v. *County Commissioners*, 108 Mass. 68. *Valentine* v. *Boston*, 22 Pick. 75. *Butchers' Slaughtering & Melting Association* v. *Boston*, 139 Mass. 290. *Denham* v. *County Commissioners*, 108 Mass. 202. This distinction does not exist in the city of Boston, as its board of street commissioners is the only tribunal authorized to lay out ways, and the statutes prescribe a uniform manner in which all ways shall be laid out. Pub. Sts. *c.* 49, § 84. *Commonwealth* v. *Boston*, 16 Pick. 442.

A public footway would be a highway, within the general meaning of that word, and would be either a highway or a town way within the distinctive meanings of those words as used in the statutes, according as proceedings for laying it out should be required by law to be commenced before the county commissioners or the municipal authorities.

The St. of 1874, *c.* 299, provided that towns and cities might lay out footways, and that the proceedings should be in conformity with the provisions of law applicable to the laying out of town ways. If there was authority, under general laws, to lay out public footways before this statute, they would be highways or town ways according to the manner in which they had been laid out; if there was no prior authority, which is by no means clear, the statute established them as the species of highways called town ways, (except in the city of Boston, where that species is unknown, and all ways are technical highways,) and they would come within the purview of the Pub. Sts. *c.* 112, § 125, by which highways or town ways could be laid out across railroads.

We do not regard that statute as an enabling act, authorizing highways and town ways to be laid out across railroads, but as recognizing and regulating an existing right. Highways and railroads are both established by the legislative exercise of the

right of eminent domain, delegated in the one case to public officers, and in the other to private persons. Both are franchises; the one delegated to public officers, to be exercised for the public good; the other granted to individuals, to be exercised for their emolument, because the public good will be thereby subserved. The Legislature has authority to grant either so as to interfere with a previous grant of the other, providing for compensation when private rights are impaired. When both are granted under general laws, as well as when one is under a special act, the question whether the one will be controlled or limited by the prior exercise or grant of the other must depend upon the intention of the Legislature; and the question we are considering is, whether the appropriation of the land to the public use of a railroad is so inconsistent with its public use as a highway crossing as to prohibit its subsequent appropriation for that purpose. We think it is very clear that it is not. In the language of Chief Justice Shaw, in *Boston Water Power Co.* v. *Boston & Worcester Railroad*, 23 Pick. 361, 398, "Both uses may well stand together, with some interference of the later with the earlier, which may be compensated for by damages." See also *Wellington, petitioner*, 16 Pick. 87.

The charters under which the petitioner claims its exclusive right (Sts. 1831, *c.* 72, and 1833, *c.* 116) contain no reference to the laying out of highways across the railroad, and there was no general act upon the subject when the charters were granted. The Legislature surely did not intend, by authorizing the taking of land for a railroad, to divide the State from its western boundary to the sea by a strip of land five rods wide over which no public way could be laid. There is nothing in the nature or relation of the two public uses to indicate such an intention; and the first legislative utterance on the subject assumes the right to lay out public ways across railroads, and regulates it. Rev. Sts. *c.* 39, § 69. "If, after the laying out and making of any railroad already granted, or which may be hereafter granted, any turnpike road or other way shall be so laid out as to cross said railroad, the said turnpike road or way may be so made as to pass under or over said railroad, and said turnpike or way shall in all cases be so made as not to obstruct or injure such railroad." This was the only statute upon the subject for twenty years.

The St. of 1857, c. 287, was the first act which made full regulations for laying out ways across railroads. The first section provided that a " turnpike road, or other way," might be laid across a railroad wherever the county commissioners shall so authorize and direct. Section 2 provided that the county commissioners, after notice and hearing, might lay out "a way" across a railroad. Section 3 provided that " the selectmen of any town, or the mayor and aldermen of any city, before laying out any way across a railroad, shall make application to the county commissioners . . . . for permission so to do; " and that the commissioners after hearing might authorize the selectmen or mayor and aldermen to lay out a way across the railroad.

We think this statute was a legislative recognition, and restriction and regulation, of the right of the county commissioners, and of towns and cities, to lay out public ways across railroads. This statute is substantially reënacted in the Gen. Sts. c. 63, §§ 57–60, and in the revision of the railroad acts in the St. of 1874, c. 372, § 92. In the latter, the words " a highway or town way " are substituted for the words " a turnpike road or other way " in the earlier statutes, and so in the Pub. Sts. c. 112, § 125.

From a consideration of the subject matter, and an examination of the statutes referred to, it seems that prior to the Revised Statutes there was authority to lay out public ways across railroads. The Rev. Sts. c. 39, § 69, as construed in *Boston & Maine Railroad* v. *Lawrence*, 2 Allen, 107, required that ways laid out across railroads should pass over or under the railroad, and provided that they should be so made as not to obstruct or injure the railroad. The St. of 1857, c. 287, required that the crossing should be with the consent of, and in the manner prescribed by, the county commissioners. The reënactment of this in the Gen. Sts. c. 63, §§ 57–59, providing for the manner in which " a turnpike road or other way " should be laid out across a railroad, was in force when the St. of 1874, c. 299, authorizing towns and cities to lay out footways in the manner provided for laying out town ways, took effect, and under it footways came, even if they were not before, within the designation of a " turnpike road or other way." Certainly after the enactment of that statute until the St. of 1874, c. 372, took effect, (a

period of eight months,) there was authority for laying out a footway across a railroad; and there is no ground for the argument that the change in the latter statute was intended or can operate to take away that authority. The change made was in separating the provision in regard to "turnpike" from that in regard to "other way." This involved a change in phraseology, not only by omitting the word "turnpike," but by employing some synonym for "other way." The "other way" in the earlier statute included every public way, whether laid out by the county commissioners or by towns or cities, and whether a carriageway or a footway, and the words "highway or town way" in the revision have the same meaning. A footway laid out by a town or city under the St. of 1874, *c.* 299, comes within the strict definition of a town way. There can be no doubt of the authority of the street commissioners of Boston to lay out a footway, and whether the authority was given by the St. of 1874, *c.* 299, or was vested in them, in common with county commissioners and towns and cities, by earlier general authority to lay out ways, or is derived from special provisions relating to the town and city of Boston, (see *Gould* v. *Boston*, 120 Mass. 300,) is immaterial. The authority, however derived, must be exercised in the manner prescribed by the statutes relating to laying out ways in Boston. A way so laid out, whether a footway or carriage way, may be a highway, within the meaning of that word in the statute, rather than a town way. That, however, is immaterial. Every public way laid out by the county commissioners, or by a city or town, or by the board of commissioners of streets of the city of Boston, must be either a highway or a town way, within the meaning of those words in the Pub. Sts. *c.* 112, § 125, and the authority to lay it out across a railroad is recognized and regulated by, if not derived from, the statute.                                      *Petition dismissed.*

*A. L. Soule*, for the petitioner.

*A. J. Bailey*, (*R. W. Nason* with him,) for the respondents.