OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law*, Highways. *Way*, Public: what constitutes, street
railway structures, Highway Fund. *Street Railway*, Structures.
*Metropolitan Transit Authority*. *Words*, "Public highways and
bridges," "Highway."

The words "public highways and bridges" and "highway" as used in
art. 78 of the Amendments to the Constitution do not include the
subways, tunnels, viaducts, elevated structures and rapid transit
extensions used by the Metropolitan Transit Authority.
It is not within the power of the General Court to declare by statute that
the subways, tunnels, viaducts, elevated structures and rapid transit
extensions used by the Metropolitan Transit Authority are public
highways or bridges within art. 78 of the Amendments to the Con-
stitution.
Legislation providing for payment from the Highway Fund, without
further appropriation, of the sums expended by the Metropolitan
Transit Authority for maintenance and repair of the subways, tunnels,
viaducts, elevated structures and rapid transit extensions used by it,
or appropriating from the Highway Fund the sums so expended, would
be contrary to art. 78 of the Amendments to the Constitution.

To the Honorable the Senate of the Commonwealth of
Massachusetts:

The Justices of the Supreme Judicial Court respectfully
submit these answers to the questions set forth in an order
adopted by the Senate on March 30, 1949, and transmitted
to the Justices on April 1. A copy of the order, to which is
annexed a message from His Excellency the Governor (Sen-
ate, No. 581) containing a proposed bill, is hereto attached.

The order recites that the bill is pending before the Gen-
eral Court; that the Highway Fund, to which reference is
made in the bill, consists almost entirely of sums received
under G. L. (Ter. Ed.) c. 64A relating to the taxation of
sales of gasoline and certain other motor vehicle fuels, which
sums are credited to the Highway Fund under the provi-
sions of § 13 of said chapter, and of fees paid in connection
with the registration, operation, and use of motor vehicles,
which fees are credited to the Highway Fund under the pro-

visions of § 34 of c. 90; and that the subways, tunnels, viaducts, elevated structures, and rapid transit extensions used by the Metropolitan Transit Authority were constructed for the purpose of relieving traffic on the surface of the streets and ways in the several cities and towns served by the Authority and still materially contribute to the relief of traffic on such streets and ways.

The proposed bill in its § 2 would insert into St. 1947, c. 544, a § 8D, the first paragraph of which reads as follows: "The subways, tunnels, viaducts, elevated structures and rapid transit extensions used by the Authority are hereby declared to be public highways or bridges within the meaning of Article LXXVIII of the Amendments to the Constitution." The second paragraph provides for the payment, without further appropriation, from the Highway Fund to the Authority upon certificate of the trustees of the Authority, subject to the approval of the department of public utilities, of the amount reasonably expended by the Authority in each year "for the maintenance and repair of said subways, tunnels, viaducts, elevated structures and rapid transit extensions."

Article 78 of the Amendments to the Constitution was approved by the voters at the election on November 2, 1948, and reads as follows: "Article LXXVIII. No revenue from fees, duties, excises or license taxes relating to registration, operation or use of vehicles on public highways, or to fuels used for propelling such vehicles, shall be expended for other than cost of administration of laws providing for such revenue, making of refunds and adjustments in relation thereto, payment of highway obligations, or cost of construction, reconstruction, maintenance and repair of public highways and bridges and of the enforcement of state traffic laws; and such revenue shall be expended by the commonwealth or its counties, cities and towns for said highway purposes only and in such manner as the general court may direct; provided, that this amendment shall not apply to revenue from any excise tax imposed in lieu of local property taxes for the privilege of registering such vehicles."

It is obvious that § 8D contained in the pending bill is designed to provide for the use of the Highway Fund composed almost entirely of the revenue derived from the operation of motor vehicles and referred to in art. 78 of the Amendments for the maintenance and repair of subways, tunnels, viaducts, elevated structures and rapid transit extensions used by the Authority, and that this can be done only if the words "public highways and bridges" and "highway" as used in art. 78 include, or can by legislative fiat be made to include, such subways, tunnels, viaducts, elevated structures and rapid transit extensions.

The questions propounded in the order are these:

"1. May the General Court declare, as set forth in the first paragraph of said section eight D, that the subways, tunnels, viaducts, elevated structures and rapid transit extensions used by the Authority are public highways or bridges within the meaning of Article LXXVIII of the Amendments to the Constitution?

"2. May the General Court provide that sums expended for the maintenance and repair of subways, tunnels, viaducts, elevated structures and rapid transit extensions shall be paid without further appropriation from the Highway Fund, as set forth in said section eight D?

"3. May the General Court appropriate from the Highway Fund sums expended by the Metropolitan Transit Authority, for the maintenance and repairs of subways, tunnels, viaducts, elevated structures and rapid transit extensions?"

The function of a written constitution adopted by the people is to establish by their votes an objective standard of conduct by which all departments of the government, executive, legislative and judicial alike, shall be bound, until the constitution is changed by another vote of the people. In order that this function may be performed, and that the will of the people may prevail, it is necessary that the words inserted into the constitution by their votes

be interpreted as they meant them to be interpreted at the time and in the circumstances of their adoption. Accordingly this court said in *Attorney General* v. *Methuen,* 236 Mass. 564, at page 573, "An amendment to the Constitution is one of the most solemn and important of instruments. . . . Its words should be interpreted in 'a sense most obvious to the common understanding at the time of its adoption,' because it is proposed for public adoption and must be understood by all entitled to vote." And in *Yont* v. *Secretary of the Commonwealth,* 275 Mass. 365, at pages 366–367, this court said that an amendment to the Constitution "was written to be understood by the voters to whom it was submitted for approval. It is to be interpreted in the sense most obvious to the common intelligence. Its phrases are to be read and construed according to the familiar and approved usage of the language." In *Tax Commissioner* v. *Putnam,* 227 Mass. 522, at page 524, it was said that the Constitution "is to be interpreted in the light of the conditions under which it and its several parts were framed, the ends which it was designed to accomplish, the benefits which it was expected to confer, and the evils which it was hoped to remedy." In *General Outdoor Advertising Co. Inc.* v. *Department of Public Works,* 289 Mass. 149, at page 158, it was said that an amendment to the Constitution "is to be construed in the light of the circumstances under which it was framed, the causes leading to its adoption, the imperfections hoped to be remedied, and the ends designed to be accomplished. . . . Its words are to be given their natural and obvious sense according to common and approved usage at the time of its adoption." See also *Loring* v. *Young,* 239 Mass. 349, 372; *Opinion of the Justices,* 262 Mass. 603, 605; *Opinion of the Justices,* 266 Mass. 583, 588; *Mount Washington* v. *Cook,* 288 Mass. 67, 70; *Opinion of the Justices,* 308 Mass. 601, 611; *Opinion of the Justices,* 308 Mass. 619, 626.

Applying these tests in the present instance, we cannot believe that when the people adopted art. 78 of the Amend-

ments and accepted the words "public highways and bridges" and "highway" contained therein, they understood those words as comprehending subways, tunnels, viaducts, elevated structures and rapid transit extensions which were designed exclusively for the use of a railway for operating its cars, and which had never been laid out, constructed or paid for as in the case of ordinary highways. To include these structures within the meaning of the words "public highways and bridges" and "highway" would not give to those words "their natural and obvious sense according to common and approved usage." On the contrary, it would give to them an unusual and more or less figurative meaning which would never occur to a voter in the polling booth.

The word highway has frequently been employed in our decisions in such a manner as to indicate that it was understood to mean a roadway for persons and vehicles rather than structures erected for the exclusive use of railways. See, for example, *Harding* v. *Medway*, 10 Met. 465; *Boston & Albany Railroad* v. *Boston*, 140 Mass. 87; *Commonwealth* v. *Butler*, 204 Mass. 11; *Wood* v. *Concord*, 268 Mass. 185, 188; *L'Homme* v. *Winchendon*, 288 Mass. 291. We are aware that a few instances can be found in which railways have been referred to as highways or as equivalent to highways. *Opinion of the Justices*, 231 Mass. 603, 608. *Opinion of the Justices*, 261 Mass. 556, 605. See *Worcester* v. *Western Railroad*, 4 Met. 564, 566. But the context indicates that these references were intended by way of analogy rather than of definition, much as the ocean is sometimes referred to as the highway of the nations. The voters of the Commonwealth could not have had any such meaning in mind when they adopted art. 78 of the Amendments.

Neither can we think that the facts that the subways, tunnels, viaducts, elevated structures, and rapid transit extensions are for the most part located under or above public ways, and that their use materially contributes to reduce traffic on the surface of the ways, would cause the voting public to regard these structures as in themselves highways

or parts of highways upon which the Highway Fund could
be expended under art. 78 of the Amendments.

Confirmation of this view, if any is needed, is found when
we consider more particularly the additional test of inter-
pretation laid down by the cases and opinions hereinbefore
cited — the test of the circumstances in which, and the
purposes for which, art. 78 of the Amendments was adopted.
At the time of the adoption of that article there existed
the Highway Fund set up in accordance with G. L. (Ter. Ed.)
c. 90, § 34, as amended, and devoted by that section to
certain specific purposes.   These purposes were for the
carrying out of the provisions of law relative to the use of
motor vehicles and the taxation of sales of gasoline and
other motor vehicle fuels, for the maintenance and con-
struction of town and county highways and of State high-
ways and bridges, for engineering services and expenses,
for the purchase and care of road building machinery, for
snow removal, for the maintenance of signs and care of
shrubs and trees on State highways, for expenses incidental
to these purposes, to meet the requirements of highway
and grade crossing bonds, to meet the requirements of
certain metropolitan parks loans and payments "out of
receipts from motor vehicle fees for particular traffic routes
now or hereafter authorized," for the maintenance and
construction of boulevards, and for the maintenance in
part of the State police, the department of the State auditor,
the department of the State treasurer, and the commission
on administration and finance.   It will be seen that the
purposes to which the Highway Fund could be devoted
under the general statute in force when art. 78 of the Amend-
ments was adopted were with sufficient certainty intended
to be limited to expenditures for purposes connected with
roads which were available for use by motor vehicles and
with the enforcement of laws affecting such roads and the
partial support of State departments having to do in part
with the administration and expenditure of the fund.   As
stated in the order submitted to us, the fund consists "almost
entirely" of sums received from taxes on sales of gasoline

and other motor vehicle fuels and fees paid in connection with the operation and use of motor vehicles. When art. 78 was adopted, under G. L. (Ter. Ed.) c. 90, § 34, none of the fund could be used for purposes in which owners of motor vehicles as such were not interested. None of it, so far as we can see, could be expended upon any of the structures mentioned in § 8D contained in the pending bill. The public, a large proportion of which had contributed to the fund, cannot be thought to have been ignorant of its existence and general purposes. The conclusion is irresistible that the people of the Commonwealth in adopting art. 78 of the Amendments intended to make sure that the moneys exacted from owners of motor vehicles should be used solely for the purposes of highways and bridges for the use of such vehicles and could not have supposed that the highways referred to in the Amendment would include structures which were adapted exclusively for use by the cars of the Metropolitan Transit Authority and of which motor vehicles could make no use.

Article 78 of the Amendments as adopted by the people on November 2, 1948, must be interpreted to forbid the diversion of revenue derived from fees and taxes on sales of fuels paid by owners of motor vehicles to expenditures in connection with the structures of the Metropolitan Transit Authority. The Legislature is bound by that article as adopted and cannot now by enacting a declaratory statute change the meaning of the article so as to permit such diversion.

The answer to each of the three questions submitted is "No."

STANLEY E. QUA.
HENRY T. LUMMUS.
ARTHUR W. DOLAN.
JAMES J. RONAN.
RAYMOND S. WILKINS.
JOHN V. SPALDING.
HAROLD P. WILLIAMS.