## OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law,* Highway Fund.   *Way,* Public: Highway Fund; bicycle paths.   *Words,* "Highway," "Bike path."

Pending legislation providing for the establishment of bikeways, composed of bike paths, bike lanes and bike routes as defined, along "highways to be designated primary and secondary bikeway commuting routes," and for the establishment of bicycle parking facilities "at or adjacent to a mass transit facility," is designed to encourage commuting by bicycle, thereby providing a safe and convenient alternative to travel by motor vehicle and increasing the safety of highways for motor vehicles; revenues from the Highway Fund may be expended for the establishment of bikeways and bicycle parking facilities under the authority given by art. 78 of the Amendments to the Massachusetts Constitution, as amended by art.

104, to expend highway funds for the "construction, reconstruction, maintenance and repair of public highways" and for "mass transportation purposes." [897-904]

Notwithstanding a provision of a pending legislative bill that designers of bicycle parking facilities should "take into consideration" the construction of such facilities "at points of general interest," money from the Bikeway Fund established thereunder may not be used to construct bicycle parking facilities that are not in proximity to a mass transit facility. [904-905]

On July 28, 1976, the Justices submitted the following answer to a question propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit this reply to the question set forth in an order adopted by the Senate on June 9, 1976, and transmitted to us on June 16, 1976. The order recites that there is pending before the Senate a bill, Senate No. 1534, entitled, "An Act providing for the establishment of bicycle paths in the commonwealth." A copy of the bill was transmitted to us with the order. According to the recitals in the order, the bill provides for the construction and maintenance of bikeways and bicycle parking facilities, to be paid for by a bikeway fund to which one per cent of revenues and excises on motor vehicle use and fuel is to be credited. Bikeways, according to the bill, are composed of "bike paths, bike lanes and bike routes." The order recites that bike lanes and bike paths are areas for bicycle traffic that are to run along roads used for motor vehicle traffic and that bike routes are roadways shared by bicycles and other forms of transportation.

The order declares that grave doubts exist as to the constitutionality of Senate No. 1534, if enacted, and requires the opinions of the Justices on the following question:

"Is it constitutionally competent for the General Court, in view of the limitations provided in Article 78 of the Amendments to the Constitution of the Commonwealth on the use of certain revenues and excises for highway and mass transportation purpose, to enact said

bill providing for the establishment of bicycle paths in the commonwealth, (Senate No. 1534) into law?"[1]

The design of Senate No. 1534, apparent from a reading of the provisions of the bill, is to construct bikeways and bicycle parking facilities for use by commuting bicyclists (those using a bicycle as a means of transportation rather than recreation) thereby providing a safe and convenient alternative to travel by motor vehicle, and, in addition, thereby increasing the safety of our highways for motor vehicles. Although no restriction appears in the bill which would exclude bicyclists pursuing recreational interests from the bikeways or would prohibit them from using the parking facilities, the dedication of the bikeways and parking facilities to commuting purposes is reflected in provisions of the bill establishing guidelines for the construction of the bikeways and parking facilities.

Under § 1 of the proposed bill, bikeways are to be constructed along "highways to be designated primary and secondary *bikeway commuting routes*" (emphasis supplied). The bill also provides that the bikeways are to be planned and constructed with consideration given to "potential users in high density employment areas," to "bicycle accident locations," and to "connections to other modes of transportation," all of which reveal a primary focus on the needs of commuters.

Our conclusion that the bikeways are intended to provide an alternative means of travel for commuters is bolstered by the fact that all the bikeways constructed pursuant to the bill are to be tied to the highway system. According to the definitional section of the bill, both bike lanes and bike routes are to share certain roadways with other forms of transportation. The distinction between a

---

[1] In response to our invitation to interested persons to file briefs, we received a brief from the Massachusetts Public Interest Research Group (PIRG) and a brief from the Executive Office of Transportation and Construction and the Massachusetts Department of Public Works (EOTC). The Environment Committee of the Boston Bar Association has advised the court by letter dated July 23, 1976, that it voted "to endorse" the PIRG brief on July 15, 1976.

bike lane and a bike route is that the former is created by designating ("by means of painted lines, pavement coloring or other appropriate markings") a lane for the exclusive use of bicycles, whereas the latter is established merely by designating a roadway to be shared by bicycles and other forms of transportation.

A "bike path," according to the bill, is "a route for the exclusive use of bicycles separated by grade or other physical barrier from motor traffic." We construe "bike path," so defined, as referring only to a path adjacent or in proximity to a roadway used by motor vehicles. The use of the terms "grade" and "physical barrier" to define the nature of the separation of the bike path from a roadway indicates that the bike paths contemplated by the bill are only those that parallel a roadway. See *Page Steel & Wire Co.* v. *Smith Bros. Hardware Co.,* 64 F.2d 512, 513 (6th Cir. 1933); *Kindell* v. *State,* 407 S.W.2d 784, 786 (Tex. Crim. App.), cert. denied, 385 U.S. 933 (1966). Additionally, bikeways, according to § 1 of the bill, are to be classified as "primary and secondary" according to the highways to which the bikeways relate, lending further support to our construction of the term "bike path." We also note that the Senate itself, in the order adopted on June 9, 1976, viewed the term "bike paths" as used in the proposed bill as referring to bikeways running "along routes and roads used for motor vehicle traffic."

With respect to the construction of bicycle parking facilities, § 1 of the bill provides that bikeways and bicycle parking facilities shall be designed with consideration given to "bicycle parking facilities at points of public interest." This language grants discretion in those that are to design the bikeways and parking facilities to consider such factors, but it does not authorize or require the designers to construct parking facilities at points of public interest, nor does it restrict potential sites for the construction of parking facilities only to such points of interest. Section 1 provides that "[m]onies credited to the Bikeway Fund ... shall ... be appropriated and expended" for a specified per-

centage of "the cost of constructing a bicycle parking facility at or adjacent to a mass transit facility." This provision of the bill we construe to be mandatory so that the Bikeway Fund may not be used to construct parking facilities that are not in proximity to a mass transit facility. As so restricted, the parking facilities are to become an integral part of our mass transportation system and thus reflect an emphasis on providing facilities for commuter bicycle traffic.

The design of bikeways, as gleaned from the nature of the bill's provisions, is intended to encourage the use of bicycles by commuters, to provide a safe means of transportation for both bicyclists and drivers of automobiles and other vehicles by designating routes available to each, and to reduce congestion on the highways. The bicycle parking facilities are intended to facilitate the use of our mass transportation network.

We are asked to determine whether a bill to establish such bikeways and parking facilities out of funds derived in part from the gasoline excise tax[2] is permissible in light of the restrictions provided in art. 78 of the Amendments to the Massachusetts Constitution. Article 78, as amended by art. 104, states: "No revenue from fees, duties, excises or license taxes relating to registration, operation or use of vehicles on public highways, or to fuels used for propelling such vehicles, shall be expended for other than cost of administration of laws providing for such revenue, making of refunds and adjustments in relation thereto, payment of highway obligations, or cost of construction, reconstruction, maintenance and repair of public highways and bridges, and mass transportation lines and of the enforcement of state traffic laws, and for other mass transportation purposes; and such revenue shall be expended by the commonwealth or its counties, cities and towns for said highway and mass transportation purposes only and in

[2] Section 3 of the proposed bill provides that monies collected from the registration of bicycles are to be an additional source of revenue for the Bikeway Fund.

such manner as the general court may direct; provided, that this amendment shall not apply to revenue from any excise tax imposed in lieu of local property taxes for the privilege of registering such vehicles."

We conclude that a bikeway as defined in the proposed bill is so intimately related to a highway, to traditional highway uses, and to the interests of motorists that the establishment of bikeways is within the scope of the provision in art. 78 permitting the use of the specified funds for the "construction, reconstruction, maintenance and repair of public highways."

Bicycles traditionally have a recognized place on our highways. Bicycles are expressly authorized by statute to use most public ways. G. L. c. 85, § 11B. When art. 78 was adopted (it was approved by the people in 1948) restricting the use of specified funds to certain "highway purposes," bicycles were a part of the legitimate vehicular traffic on our highways.[3] It was therefore not unforeseen to those adopting art. 78 that highway funds would be expended on roadways that would be used by bicycles.

Funds used to create bike lanes and bike routes under Senate No. 1534 are to be spent on adapting roadways to use by bicycles, as that use is described in the bill. With respect to establishing bike lanes, only painted lines (or some equivalent to designate an area of the roadway for the exclusive use of bicycles) need be added to a roadway to transform a portion of it into a bike lane. With respect to bike routes, only signs, presumably either expressly authorizing bicycle traffic or regulating bicycle and motor vehicle traffic, need be placed on a roadway to create a

---

[3] Although G. L. c. 85, § 11B, which expressly authorizes the use of bicycles on public ways was not in effect when art. 78 was adopted, it is clear from other legislation that had been enacted before the adoption of art. 78 that bicycle riders were accepted as legitimate users of public ways. See St. 1894, c. 479, §§ 1, 3, 5; St. 1898, c. 121, §1; St. 1917, c. 344, pt. 5, §§ 14, 15; St. 1921, c. 377; St. 1941, c. 710, § 1. See also G. L. c. 82, § 34 (in effect at the time art. 78 was adopted) where municipalities were permitted to reserve spaces on highways for bicycle traffic.

bike route. The alterations required to create bike lanes and bike routes do nothing to change significantly the appearance or the use of our highways. They are, in effect, merely steps taken to regulate, in the interests of bicycle and motor vehicle safety, the flow of traffic on the highways.

The expenditure of funds so to regulate highway traffic is consistent with the provisions of art. 78. Thus, there is no constitutional obstacle to the expenditure of revenues credited to the Bikeway Fund for the establishment of bike routes and bike lanes.

Functionally, bike paths are little different from bike lanes and bike routes. All three are intended to provide a safe route of travel for bicycles and so to regulate the flow of motor vehicle and bicycle traffic as to reduce the interference and inconvenience that each type of vehicle might cause to the other. The question arises, however, whether highway funds as provided in art. 78 may be expended properly for the construction of bike paths, as they may for the establishment of bike routes and bike lanes, in light of the physical separation of bike paths from the paved roadways along which the paths run. We conclude that the physical separation of bicycle paths from paved roadways does not require that such paths be distinguished from bike lanes and bike routes for the purpose of determining whether highway funds as specified in art. 78 may be expended for their construction.

The term "highway," as generally understood, does not have a restrictive or a static meaning. It denotes ways laid out or constructed to accommodate modes of travel (and other related purposes) that change as customs change and as technology develops. Cf. *Opinion of the Justices,* 297 Mass. 559, 561-562 (1937); *Peabody* v. *Boston,* 220 Mass. 376, 378 (1915); *Sears* v. *Crocker,* 184 Mass. 586, 587-589 (1904). "In the most primitive state of society the conception of a highway was merely a footpath; in a slightly more advanced state it included the idea of a way for pack animals; and, next, a way for vehicles drawn by

animals, — constituting, respectively, the 'iter,' the 'actus,' and the 'via' of the Romans. And thus the methods of using public highways expanded with the growth of civilization, until to-day our urban highways are devoted to a variety of uses not known in former times, and never dreamed of by the owners of the soil when the public easement was acquired." *Cater* v. *Northwestern Tel. Exch. Co.*, 60 Minn. 539, 543 (1895).

Because of this view of the scope of the term "highway," a footpath has been considered to be part of a highway (*Boston & Albany R.R.* v. *Boston*, 140 Mass. 87, 88 [1885]; *Tyler* v. *Sturdy*, 108 Mass. 196 [1871]), and a sidewalk beside a roadway has been deemed part of that way (see *Lucianelli* v. *Newton*, 288 Mass. 535, 536 [1934]; *State* v. *Scott*, 82 N.H. 278, 278-279 [1926]; *Smith* v. *Jefferson*, 8 Wis. 2d 378, 384 [1959]). See also G. L. c. 83, § 25; G. L. c. 81, § 18 (where sidewalks are statutorily seen as part of a highway or public way). The same reasoning has led to the inclusion of bicycle paths along roadways within the scope of those ways. *Ryan* v. *Preston*, 59 App. Div. 97, 98-99 (N.Y. 1901), aff'g 32 Misc. 92 (Sup. Ct. 1900). See 23 U.S.C. § 217 (Supp. IV, 1974) (wherein bicycle lanes and paths are expressly included within the definition of "high-way project" so that monies from the Federal Highway Trust Fund may be used to establish bike routes "in conjunction with highway rights-of-way").

Not only does the term "highway," as it is generally understood, include areas other than and beyond the boundaries of the paved surface of a roadway, but also that term was so used and understood at the time art. 78 was adopted. The Highway Fund, as established by G. L. c. 90, § 34, was in existence when art. 78 was adopted. The uses to which that fund was put were known and, by implication, adopted as proper uses to which highway funds under art. 78 might be put. See *Opinion of the Justices*, 324 Mass. 746, 751-752 (1949). Under that statute revenues from the Highway Fund could be expended for "the erection and maintenance of direction signs and warning signs

and for the care of shrubs and trees on state highways."
G. L. c. 90, § 34 (2) (*d*), as appearing in St. 1943, c. 427,
§ 2. It was not required that money be spent only on the
part of a highway used for vehicular traffic. It was required,
however, that expenditures be limited to "purposes con-
nected with roads which were available for use by motor
vehicles" and to "purposes in which owners of motor ve-
hicles as such were ... interested." *Opinion of the Justices,*
324 Mass. 746, 751, 752 (1949).[4] In light of the physical
proximity and functional interrelation of bicycle paths to
highways, we conclude that bicycle paths are directly re-
lated to "purposes connected with roads ... available for
use by motor vehicles."

Bike paths, as well as bike routes and bike lanes, are
also directly related to "purposes in which owners of motor
vehicles ... [are] interested." The bikeways are designed
to facilitate the flow of both bicycle and motor vehicle traf-
fic and to reduce the number of bicycle-motor vehicle acci-
dents. The significance of the proposed bikeways to mo-
torists should not be underestimated and is dramatized by
the increase in the use of bicycles in recent years and the
concomitant increase in the number of bicycle-motor ve-
hicle accidents. Over 85,000,000 Americans own bicycles
(H.R. Rep. No. 118, 93d Cong., 1st Sess., U.S. Code Cong.
& Ad. News at 1878 [1973]) and the annual sale of bicycles
has been steadily increasing. According to briefs filed by
both amici curiae, statistics compiled by The Bicycle Insti-
tute of America show that annual sales of bicycles in the
United States have increased more than threefold in a
recent twelve-year period — in 1960, 3.7 million bicycles
were sold, whereas, in 1972, 13.9 million bicycles were

---

[4] We note also that art. 104 of the Amendments to our Constitution
which amended art. 78 by expressly allowing the use of highway funds
for "mass transportation purposes" reflected a relaxation of the rigid
requirements of art. 78 as it was written at the time of adoption in
1948. See the Majority Report of the Joint Legislative Committee on
Transportation, Senate Doc. No. 1301 (1972).

sold.[5] From 1970 to 1974, there was a forty-two per cent increase in bicycle-motor vehicle accidents in the Commonwealth (2,033 occurring in 1970; 2,895 occurring in 1974) according to Massachusetts Registry of Motor Vehicle statistics cited in one of the briefs.[6] Motorists as well as bicyclists will benefit from the development of a bikeway system that regulates and, where necessary, segregates bicycle and motor vehicle traffic. See H.R. Rep. No. 118, 93d Cong., 1st Sess., U.S. Code Cong. & Ad. News at 1878 (1973). It can be expected that the bikeways will reduce bicycle-motor vehicle related accidents and ensure a "safe, smooth, [and] direct" flow of traffic. Senate No. 1534, § 1.

Senate No. 1534 provides, in addition, that revenues contributed to the Bikeway Fund also may be expended on establishing bicycle parking facilities and on maintaining the bikeways and parking facilities.

With respect to the cost of constructing bicycle parking facilities, we conclude that the provision in art. 78, as amended by art. 104, authorizing the use of highway funds as provided therein for "mass transportation purposes" would justify the use of such funds for the construction of the parking facilities. Since monies from the Bikeway Fund will be used only for the construction of parking facilities "at or adjacent to a mass transit facility," the parking facilities will enable some people not within walking distance of a mass transit station or stop to commute to mass transit facilities and to use those facilities regularly. The effect will be not only to increase the use of mass transportation facilities but also to reduce further the congestion of motor vehicle traffic on our highways by facilitating the use of an alternative mode of travel.

As to the costs of maintenance of the bikeways and parking facilities, we consider these expenses to be incidental to the establishment of bikeways and authorized by the provision in art. 78 permitting highway funds to be ex-

---

[5] Brief of PIRG at 14; brief of EOTC at 1.

[6] Brief of EOTC at 7.

pended on the "maintenance ... of public highways."
The answer to the question is, "Yes."

EDWARD F. HENNESSEY
PAUL C. REARDON
FRANCIS J. QUIRICO
ROBERT BRAUCHER
BENJAMIN KAPLAN
HERBERT P. WILKINS
PAUL J. LIACOS