Barrett, J.
Plaintiff Kathleen McCarthy (“McCarthy”) commenced this negligence action to recover for severe injuries she sustained when the bicycle she was riding collided with a van driven by defendant Michael Rench (“Rench”). At the close of the presentation of McCarthy’s evidence to the jury, the judge allowed Rench’s Mass. R. Civ. R, Rule 50(a), motion for a directed verdict. McCarthy appealed.
Viewed in the light most favorable to McCarthy, Nei v. Burley, 388 Mass. 307, 310 (1983); Waite v. Goal Systems Intern., Inc., 55 Mass. App. Ct. 700, 701 (2002), the evidence indicated that on March 15, 2001, McCarthy was riding her bicycle between the curb and the fog line on the eastbound side of Elm Street in North Attleboro. As she neared the driveway entrance to the bank to which she was headed, McCarthy observed a rock in her path. She attempted to ride left, around the rock, and then turn right into the bank’s driveway. However, as she swerved left, she collided with the Plymouth Voyager van driven by Rench. The front bumper of Rench’s van struck McCarthy’s left leg and her bicycle, sending McCarthy, still clutching the handlebars, onto the hood of the van.[1] When he heard the noise of the impact, Rench applied the brakes and skidded to a stop in the opposite lane, rolling McCarthy off the van’s hood and onto the pavement.[2]
Rench had been driving down Elm Street in the same direction as McCarthy. He testified that he first noticed McCarthy riding her bicycle on the side of the road when he was approximately 75 feet behind her,[3] and that he moved towards the double yellow center lines. He then slowed his vehicle to 20 or 25 m.p.h. because of an approaching school zone. Rench further testified that before the accident happened, he thought he had already passed McCarthy. Although he *186 claimed to have been looking at the road in front of him, he admitted that he did not see McCarthy or the initial contact between the bicycle and the van.[4]
As noted, McCarthy was riding her bicycle between the fog line and the curb of the roadway. As measured by the police officers at the scene, the roadway was 17 feet in width from the curb to the double yellow center lines. The fog line was three feet from the curb, leaving a travel lane approximately 14 feet wide.
To recover on her negligence claim, McCarthy bore “the burden of proving that [Rench] committed a breach of the duty to use reasonable care, that [McCarthy] suffered actual loss, and that [Rench’s] negligence caused [her] loss.” Glidden v. Maglio, 430 Mass. 694, 696 (2000). The question of negligence is customarily one of fact within the jury’s province; only when “no rational view of the evidence warrants a finding that the defendant was negligent” may a trial judge take the question from the jury and direct a verdict for the defendant. Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983). In this case, the directed verdict in favor of Rench undoubtedly resulted in large measure from McCarthy’s own testimony that the collision occurred when she swerved her bicycle left, across the fog line and into the travel lane. That fact alone did not, however, preclude a finding for McCarthy as a matter of law. A directed verdict motion must be denied if “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.” Doe v. Senechal, 66 Mass. App. Ct. 68, 76 (2006), quoting Raunela v. Hertz Corp., 361 Mass. 341, 343 (1972). While the question of negligence might prove to be a close one at trial, sufficient evidence was advanced by McCarthy to present this case to a jury.
McCarthy testified at trial that she crossed the fog line by four inches; at an earlier deposition, she estimated the distance to have been one foot, but admitted that she was not certain. However, there was evidence to support McCarthy’s estimates. When asked to mark the location of the impact on a photograph of the accident scene, Rench placed an “X” on the photo approximately one foot away from the fog line. Thus, it was largely undisputed that McCarthy’s bicycle remained within the three-foot space between the curb and the fog line prior to the accident, and that her bicycle was still only four feet from the curb at the time of the collision. “Bicycles are expressly authorized by statute to use most public ways[,]” Opinion of the Justices to the Senate, 370 Mass. 895, 900 (1976); see G.L.c. 85, §11B, and McCarthy was not required to remain inside the fog line next to the curb. A jury could have inferred, therefore, that the accident resulted not from any improper action by McCarthy, but instead from Rench’s operation of his van too closely to the side of the road and to McCarthy.
There was evidence of Rench’s breach of his duty of reasonable care. His testimony that he believed he had already passed McCarthy at a point in time when she was actually still bicycling ahead of him and to his right suggests that he failed to watch the road and to remain aware of McCarthy’s location in relation to his vehicle. Section 14 of G.L.c. 90 imposed upon Rench the specific duty “[i]n approaching or passing a person on a bicycle ... [to] slow down and pass at a safe distance. ...” Yet the evidence indicated that Rench operated his van far to the right of the double yellow center lines and within four feet of the curb despite having seen McCarthy bicycling in that area and *187 despite ample room to his left in the roadway.[5] Reasonable inferences were warranted that Rench failed, in violation of G.L.c. 90, §14, to pass McCarthy at a safe distance, and that such failure was the proximate cause of McCarthy’s injuries. The violation of a safety statute is evidence of negligence. LaClair v. Silberline Mfg. Co., 372 Mass. 21, 28 (1979).
The judgment for the defendant is vacated, the allowance of the motion for a directed verdict is reversed, and this action is returned to the Attleboro Division for trial.
So ordered.

 McCarthy was hospitalized for a head injury and a severe left leg fracture. The latter required the insertion of a rod to restore mobility in her ankle. McCarthy’s head wound had fully healed by the time of trial in 2005, but she remains permanently disabled from the leg injury.

 As measured by North Attleboro police officers called to the accident scene, the skid marks left by Rench’s van were 39 feet long. However, two officers testified that Rench’s speed at the time of the collision could not be determined solely from the length of the skid marks.

 This is not a case, therefore, in which a child or bicyclist darted out into the street from behind a parked car or other obstruction and the motor vehicle operator had no time to react. See Lynch v. Krancer, 302 Mass. 593 (1939); Conte v. Mizzoni, 298 Mass. 463 (1937); Ellis v. Ellison, 275 Mass. 272 (1931).

 Photographic evidence of visible damage to the right front bumper of Rench’s van indicates that prior to the collision, McCarthy was in front and to the right of Rench’s vehicle.

 While evidence of the width of Rench’s van would have indicated exactly how much room he had in the lane when passing McCarthy (i.e., the 14-foot width of the travel lane less the width of the van), the lack of such evidence was not fatal to McCarthy’s case. In Biagini v. Gelco, 30 Mass. App. Dec. 212 (1966), a car hit the opened passenger side door of a stopped vehicle as it was passing on the right. In analyzing whether the car had passed too closely, the Appellate Division used the exact measurement of the street, but estimated that the average car width at that time was “5 to 6 feet.” Id. at 219. Similarly, a jury could have drawn an inference as to the width of the defendant’s van, a common, if not ubiquitous, vehicle with which the jury would most likely be familiar.